408 P.2d 219

**Florence E. FEIGHNER, Executrix of the Estate of Emmett R. Feighner, deceased, Appellant,**

v.

**James J. CLARKE, Appellee.***

**No. I CA–CIV 80.**

Court of Appeals of Arizona.

Dec. 1, 1965.

Rehearing Denied Dec. 27, 1965.

Stockton & Hing, by Henderson Stockton, Phoenix, for appellant.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 8092. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Christy, Kleinman, Peterson, Hoyt & Fuller, by Chester J. Peterson, Phoenix, for appellee.

CAMERON, Acting Chief Judge.

Judgment was entered on the 30th day of April, 1963, against the appellant-defendant, Emmett R. Feighner, in the amount of $4,000.00 plus interest at the rate of 6% from the 29th day of December, 1959, for funds held by the defendant, by reason of an escrow or trust agreement. Judgment against defendant on his counterclaim for attorney's fees was also entered on the same day, together with jury fees in the amount of $96.00. From this judgment the appellant-defendant appeals.

We are called upon to determine the legal effect of an escrow or trust agreement upon funds held by the defendant, including the question of interest upon said funds. We are also asked to consider the question of defendant's attorney's fees under said agreement and whether jury fees were properly assessed by the trial court.

The facts as are necessary for a determination of this matter on appeal are as follows: Robert Dallas, Sr., was the owner of a small trucking business operating out of Tuba City, Arizona. He contracted with the Timberline Express Company to transfer his common carrier rights to Timberline. The application for transfer was denied by the Arizona Corporation Commission and in addition the Commission declared the common carrier rights of Dallas to be invalid. Robert Dallas, Sr., appealed this matter to the Arizona Supreme Court which decided in his favor in the case of Dallas v. Arizona Corporation Commission, 86 Ariz. 345, 346 P.2d 152 (1959).

While this matter was being considered by the Arizona Supreme Court, the plaintiff below, James Clarke, then the vice president of Timberline Express Company, Inc., entered into a written agreement with Robert Dallas, Sr., which stated that Clarke was to become, in effect, the general manager of the Dallas trucking business, and provided, in part, as follows:

"* * *

"2. Clarke agrees to pay Dallas the sum of Four-Thousand-Dollars ($4,-000.00), receipt whereof is hereby acknowledged, *upon the conditions hereinafter stated.* (Emphasis ours.)

"3. Clarke agrees to *finance* the business of Dallas and *provide all funds necessary* for the successful operation of said trucking business. (Emphasis ours.)

* * * * * *

"7. *Clarke agrees to retain Emmett R. Feighner* of Phoenix, Arizona, *as attorney* for said *business.* (Emphasis ours.)

"8. It is understood, and agreed that there is certain litigation pending in the courts for the purpose of determining the validity of the common carrier rights of Robert Dallas and of the decision of the Arizona Corporation Commission denying the application of Dallas to transfer said rights to Timberline Express Inc. of Flagstaff, Arizona and that in the event the decision of the Supreme Court or of any court of competent jurisdiction establishes the validity of Robert Dallas' rights and the decision of the Arizona Corporation Commission as to the above transfer, then it is agreed by and between the parties hereto that *Clarke will purchase and Dallas will sell subject to conditions hereinafter mentioned,* said common carrier rights and other property belonging to Dallas for the sum of Twelve-Thousand-Dollars ($12,000.00), *the above mentioned Four-Thousand-Dollars ($4,000.00), to be first applied upon said purchase price.* * * *" (Emphasis ours.)

"The above sale shall be conditioned upon a right in Dallas to call for purchase price bids for his rights and property as a common carrier under the aforesaid certificate which bids if in excess of ($12,000.00) shall be

accepted by Dallas on the condition that from the amount of the purchase price bid therefor; he shall first pay to Clarke from the proceeds of said sale made thereby the sum of One-Thousand-Dollars plus all sums of money provided by Clarke in financing the trucking business under the terms of this agreement of employment, *said bids to be called for within five (5) days after notification to Dallas, or his attorney of the validity of Dallas' certificate and to extend* for a period of ten (10) days thereafter. (Emphasis ours.)

"9. * * * until said decisions are finally rendered, [this agreement] shall be considered as an option in favor of Clarke to accept this agreement of employment, and in the event the Supreme Court should determine that Dallas' Certificate of Convenience and Necessity above mentioned is invalid and of no effect for any reason, or the Arizona Corporation Commission should grant Dallas' application to transfer said certificate as above mentioned, *then said Four-Thousand-Dollars ($4,000.00) shall be repaid by Dallas to Clarke and this agreement* shall be of no further force and effect, *otherwise said Four-Thousand-Dollars ($4,000.00) shall become the property of Dallas free of any claims or demands of Clarke.*" (Emphasis ours.)

The above agreement was prepared by Feighner at the request of Clarke and Dallas. A check dated 31 March, 1959, payable to the order of Emmett Ray Feighner, attorney for Robert Dallas, in the amount of $4,000.00 was given to the defendant Feighner.

On 12 November, 1959, the Supreme Court of Arizona found the common carrier rights of Dallas to be valid and existing. Although there is conflict in the testimony at this point, there is sufficient evidence from which the court might reasonably find that the plaintiff Clarke requested of Robert Dallas, Sr., that he pro-ceed with the agreement and transfer the rights to the plaintiff Clarke. Clarke testified that on several occasions he asked Dallas to transfer the common carrier rights to Clarke and that Dallas refused to do so.

Robert Dallas, Sr., died on 21 December, 1959, some five and one-half weeks after the decision of the court, without a transfer to Clarke having been effectuated. The defendant, Feighner, on 29 December, cashed the $4,000.00 check he had been holding, and applied the funds to attorney's fees due defendant from Dallas. Defendant Feighner testified that Robert Dallas, Sr., told him to keep the $4,000.00 and apply the amount to his attorney fees. The defendant died pending this appeal and Florence E. Feighner, Executrix of the estate of Emmett R. Feighner was substituted as the appellant pursuant to Rule 73(t) (2), Rules of Civil Procedure, 16 A.R.S.

■ Our first question concerns the right of the defendant Feighner to cash the check and so apply the funds to satisfy the obligation of Dallas to the defendant Feighner. Any rights that the defendant Feighner may have had in the funds must be derived either from the agreement or from the defendant Dallas by virtue of the said agreement.

Though the written agreement did not so specify, it is clear from the testimony and evidence that the $4,000.00 in question was given to Feighner as an escrow agent. The cashier's check was made out to "Emmett Ray Feighner, Attorney for Robert Dallas", and was to become the sole property of Dallas when the conditions contained in the agreement had been fulfilled. This is the essence of an escrow. Our Supreme Court has stated:

"A good definition of the generic term 'escrow' is this: an escrow is a written instrument which by its terms imports a legal obligation, and which is deposited with a third party, to be kept by the depository until the performance of the prescribed condition or the happening of a certain event, and then to be delivered over to the

grantee, promisee, or obligee." Young v. Bishop, 88 Ariz. 140, 146, 353 P.2d 1017, 1021 (1960).

No matter how we may construe the other terms of this "agreement of employment", the portions concerning the deposit of the check and transfer of the rights of Dallas and his certificate, constituted an escrow agreement and the check was not to be transferred until the happening of certain events. Of course, money may be delivered in escrow. American Service Co. v. Henderson, 120 F.2d 525, 135 A.L.R. 1414 (4 Cir. 1941). The defendant Feighner was bound by the terms of this agreement and could not dispose of the check other than by terms of the said agreement unless both parties to the agreement so permitted.

It is clear, construing this agreement as a whole, Hamberlin v. Townsend, 76 Ariz. 191, 261 P.2d 1003 (1953), that the intention of the parties was simply that if the Supreme Court upheld the common carrier rights of Robert Dallas, Sr., then Clarke would have an option to purchase the business for the amount of $12,000.00, with the condition that Robert Dallas, Sr., might advertise and accept a higher bid as provided in said agreement.

Dallas had the choice after the opinion of the Arizona Supreme Court, of signing the necessary papers to effect a transfer of his rights to Clarke, or to call for bids within five days after notification of the Supreme Court decision. He failed to do either. Instead the permit was transferred to a third party. We must therefore conclude that the contract between Dallas and Clarke was breached by Dallas, and that under these circumstances Clarke had the right, among other things, to demand the return of his $4,000.00 being held by the defendant Feighner. The defendant Feighner could not apply these funds in satisfaction of any claim he might have against Dallas or Clarke. In the absence of some further legal action on his part, Feighner must dispose of the $4,000.00 check in conformity with the intent of the agreement:

"The Title Company could not alter the legal rights between the parties to the escrow agreements. It is true that an escrow agent is a trustee and must act in strict accordance with the terms of the escrow agreement or it will be liable in damages for any loss suffered by reason of any departure from those terms; * * *." Malta v. Phoenix Title & Trust Company, 76 Ariz. 116, 120, 259 P.2d 554, 557 (1953).

The trial court granted interest on the $4,000.00 in the amount of 6% from the 29th day of December, 1959, until paid. This is the date that the court found that the defendant Feighner negotiated the cashier's check in the amount of $4,000.00 and deposited it to his own account. It is the contention of the defendant Feighner that the court could only provide interest from the date of judgment and not from the date of demand or date of "conversion". As has been stated by our Supreme Court:

"Unquestionably the general rule denies interest on unliquidated demands for services rendered until rendition of judgment. (citations omitted) This court in Arizona Eastern R. Co. v. Head, 26 Ariz. 259, 224 P. 1057, 1059, stated:

'* * * If the claim is unliquidated and is in dispute no interest is allowed upon the theory that the person liable does not know the sum he owes and therefore can be in no default for not paying.' (citing cases.)

and in the recent case of American Eagle Fire Ins. Co. v. Van Denburgh, 76 Ariz. 1, 257 P.2d 856, it was held that on an unliquidated claim interest should only be allowed from date of judgment." Schwartz v. Schwerin, 85 Ariz. 242, at 250, 336 P.2d 144, at 149 (1959).

Unquestionably this would be the rule if we were concerned with an "unliquidat-

ed" claim. The rule, however, is different in the case of liquidated claims. A "liquidated claim" has been described as a claim which does "not require evidence to establish it, but rested upon a mathematical computation", Petersen v. Graham, 7 Wash. 2d 464, 110 P.2d 149, at 154 (1941). In the instant case, the amount due out of escrow was known at all times to both parties. This is not the situation described in Arizona Eastern Railway Co. v. Head, supra, where the person liable does not know the sum he owes, and therefore cannot be in default for failure to pay interest. We believe that the instant claim clearly falls in the classification of a liquidated claim and under the rules of our Supreme Court, interest would run upon the cashing of the check contrary to the terms of the agreement. As has been stated by our court:

> "Both the validity and the amount of the claims in this case were disputed by the Surety Company. It is apparent, therefore, that this is not a case where the amount of the recovery, if recovery be had, was definitely fixed by agreement of the parties or capable of ascertainment by mere computation. In that class of cases, in the absence of special contract, the general rule is that interest should be computed from the time the debt became due." United States Fidelity and Guaranty Co. v. California-Arizona Const. Co., 21 Ariz. 172, at 192, 193, 186 P. 502, at 509 (1920).

The defendant further urges that since the jury was waived and the matter tried to the court, it was improper to assess the defendant jury fees in the amount of $96.00. An examination of the minute entries indicates that the matter was originally set before a jury but that on the day of the trial at 9:45 a. m., counsel waived a jury. The jury presumably having been called, the trial court in its discretion could assess the minimum jury fees as cost to the losing party. 12–332 A.R.S., Rule 54 (f), Rules of Civil Procedure, 16 A.R.S.;

Davis v. Tavasci, 1 Ariz.App. 380, 403 P.2d 315 (1965). Inasmuch as this matter will have to be remanded, as indicated below, the trial court is authorized to reassess jury fees as further evidence might indicate.

The final question to be determined and raised by the appellant, concerns the counterclaim of Feighner for attorney's fees allegedly owed by Clarke. The defendant, Feighner, in response to the suit of the plaintiff Clarke, counterclaimed for the amount of $2,850.00 as and for attorney's fees. The agreement between Clarke and Dallas specifically provided that "Clarke agrees to retain Emmett R. Feighner, Phoenix, Arizona, as attorney for said *business*". (Emphasis ours.) We do not find anything improper with Clarke, Dallas and Feighner entering into this sort of an agreement, as is quite often done, where property rights and certificates owned by the lessor might be jeopardized by improper operation of the business.

In the instant case, the court should not have rejected the claim of the defendant Feighner for attorney's fees against the plaintiff Clarke. The defendant Feighner, being an escrow agent, could not offset his attorney's fees against the amount he held in escrow. There was, however, an obligation on the part of the plaintiff Clarke to pay Feighner for attorney's fees earned in the representation by Feighner of the "business" which Clarke ran under the agreement.

Inasmuch as that amount has not been determined, the matter will have to be remanded to the Superior Court for a determination of the amount of the attorney's fees earned by the defendant Feighner under the agreement.

The matter is remanded for actions not inconsistent with this opinion.

DONOFRIO, J., and DONALD DAUGHTON, Superior Court Judge, concurring.

NOTE: Chief Judge HENRY S. STE-VENS having requested that he be relieved from consideration of this matter, Judge DONALD DAUGHTON was called to sit in his stead and participate in the determination of this decision.