Angus J. DePINTO, Appellant,

and

James P. Donohue, as Trustee in Bankruptcy for the Estate of Angus J. DePinto, Intervenor-Appellant,

v.

PROVIDENT SECURITY LIFE INSURANCE COMPANY, and Albert J. Doig, Appellees.

No. 20553.

United States Court of Appeals
Ninth Circuit.

Feb. 24, 1967.

Rehearing Denied March 29, 1967.

See also 9 Cir., 374 F.2d 50.

38

Herbert Mallamo, Evans, Kitchel & Jenckes, Joseph S. Jenckes, Jr., Phoenix, Ariz., for appellant, DePinto.

Anthony O. Jones and Joseph K. Brinig, Phoenix, Ariz., for intervenor, Donohue.

McLane & McLane, Wm. Lee McLane, Nola McLane, Thaddeus Rojek, Washington, D. C., Harold Kohn, Dilworth, Paxson, Kalish, Kohn & Dilks, Harold E. Kohn, Philadelphia, Pa., Elsing & Crable, Phoenix, Ariz., for appellees.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge:

This stockholder's derivative action, based on diversity of citizenship, was originally brought on behalf of United Security Life (United), an Arizona stock insurance corporation, by John S. Gorsuch, a citizen of Ohio. The defendants were Angus J. DePinto, Edwin B. Pegram, Francis I. Sabo, Hjalmar B. Landoe, Elmer W. Duhame, together with eight other personal defendants and three companies in addition to United. With regard to DePinto and certain other defendants, damages in the sum of $447,633.70 were sought, including an item for $314,794.19, based on a transaction which occurred on October 18, 1957, to be described below.

After commencement of the action, but prior to trial, United merged with Provident Security Life Insurance Company (Provident). However, neither Provident nor a stockholder of that company was made a party to the action. The case was tried to a jury which returned a general verdict for plaintiffs in the sum of $20,000 against Pegram, Sabo, Landoe and Vernon E. Niesz. The jury also returned special verdicts in which it exonerated DePinto and Duhame of liability. As to them the jury found, among other things, that they had not breached any then existing fiduciary duty to United nor, as directors of United, acted in a negligent manner, proximately causing loss to United with respect to the transfer of the assets in question.

The trial court considered the verdicts to be advisory only. The court determined that the verdicts were not supported by the evidence, issued its own findings of fact and conclusions of law, and entered a joint and several judgment in favor of United against twelve of the personal defendants, in amounts ranging from $308,000 to $314,794.19. The award against DePinto was for $314,794.19. In the alternative, and on the assumption that the defendants were entitled to a jury trial, the trial court granted plaintiffs' motions for directed verdicts in the same amounts as it had allowed on the basis of its own findings of fact.

DePinto, Pegram, Sabo, Landoe and Duhame, effectuated appeals to this court. We reversed and remanded for further proceedings on the ground that, by reason of the merger of United into Provident, Gorsuch, as a stockholder in United, lost his capacity to maintain this derivative action, and United lost its capacity to be sued and its capacity as the real party in interest, to obtain a judgment. Niesz v. Gorsuch, 9 Cir., 295 F.2d 909 (1961).

Upon remand, Provident was joined as a plaintiff and was realigned by the trial court as a defendant. The trial court allowed Albert J. Doig, a former stockholder of United and a then-existing stockholder of Provident, to intervene as a party plaintiff. Provident and Doig filed complaints in intervention in which, on behalf of Provident, they sought damages against DePinto, Pegram, Sabo, Landoe and Duhame and several others, in the amount of $314,794.19. The allegations in support of these claims were generally similar to those of the amended complaint and pretrial order in the original Gorsuch suit. The five named defendants filed answers joining issue on the allegations of the complaint and raising certain affirmative defenses, which plaintiffs contested. No further testimony was taken on the merits of the controversy.

The trial court re-adopted its original findings of fact and reaffirmed its original decision. The court specifically held that DePinto, Landoe, Sabo, Pegram and Duhame had been guilty of gross negligence and that all of them, except Landoe, had breached fiduciary duties in connection with the diversion of United's funds. Supplemental findings and conclusions of law were entered, together with a judgment in favor of Provident and against the same twelve personal defendants, in the same amounts as in the case of the original judgment. Alternatively, as in the case of the original judgment, this second judgment also rested on directed verdicts which were entered in favor of plaintiff.

DePinto, Landoe, Sabo, Pegram and Duhame appealed. We again reversed and remanded for a new trial, holding that the defendants were entitled to a jury trial, and that, considering the alternative basis for the judgment, the Seventh Amendment forbids an award of damages in excess of a jury verdict, not consented to by the defendants. DePinto v. Provident Security Life Insurance Company, 9 Cir., 323 F.2d 826 (1963).

Following the second remand, there were three important developments before the case proceeded to another jury trial. One of these was the entry of a comprehensive pretrial order which superseded the pleadings. Among other things, this order contains a lengthy statement of admitted facts, a detailed list of the contentions of the respective parties,[1] and a restatement of plaintiffs' claims against the various parties. With regard to DePinto and several other named defendants, a total claim of $553,353.63 was asserted, itemized as follows:

(1) $177,863.84 for damages sustained by United between June 30, 1956 and October 18, 1957;

(2) $314,794.19 for damages sustained by United on October 18, 1957, by reason of a transfer of assets as described below; and

(3) $60,695.60 for damages sustained by United between October 19, 1957 and June, 1959.

A second pretrial development was the agreement by executors of the estate of Duhame, deceased, to pay Provident the sum of $100,000 in consideration for a covenant not to sue. The trial court ordered that this sum be allocated to the $177,863.84 claim referred to above, and withdrew this claim from the case. The estate of Duhame was thereby dropped as a defendant. The third pretrial development was the action of the trial court, at the request of plaintiff Doig, and over the objection of DePinto, in severing the cause as to the remaining defendants, and ordering that the case proceed to trial against DePinto as the sole defendant.

It would appear, from an examination of the record, that the $60,695.60 claim against DePinto was also dropped before the case reached the jury. This is also indicated by the fact that, in its instructions to the jury, the trial court made reference only to the $314,794.19 claim. The jury returned a verdict in favor of Provident and against DePinto in that sum and on June 28, 1965, judgment was entered on the verdict. DePinto then took the present appeal.[2]

1. In its instructions to the jury, the trial court summarized plaintiffs' contentions, as follows:
"The particular acts or omissions on the part of the defendant DePinto, which plaintiffs allege occurred and amounted to negligence or breach of fiduciary duty are as follows: Acceptance of the office of director without intending to discharge the duties and responsibilities of director; delegating or relinquishing his responsibilities as a director to Kelly; failing to attend directors' meetings; failure to examine minutes, records and transactions and documents of the corporation; failure to keep himself advised by reasonable inquiry as to important transactions of the corporation, and particularly as to the transactions in question resulting in the transfer to Kelly of corporate assets; failure to investigate and to require measures for protection of the corporation with respect to conditions and transactions potentially harmful to the corporation and stockholders when such were brought to his attention or of which he should have learned in the exercise of reasonable care, and failure to exercise reasonable care to assure that adequate funds, property, and security be obtained by the corporation in return for the transfer to James E. Kelly of substantial assets of United Security Life."

2. In addition to the instant appeal and the two other appeals referred to above, the subject matter of this litigation has spawned several other lawsuits, some of a collateral nature, which have reached this court since the Gorsuch suit was filed on November 4, 1958. See Mauser v. United Security Life, 9 Cir., 267 F.2d 3 (1959); Mauser v. United Security Life, No. 16261, now pending on a second appeal; Provident Security Life Insurance

Subsequent to the institution of this appeal, DePinto was adjudicated bankrupt and James P. Donohue was appointed as Trustee in Bankruptcy. An order was subsequently entered in this court permitting the Trustee to intervene in this appeal. DePinto and the Trustee have identical interests on this appeal, and have filed joint briefs. In referring, below, to DePinto's contentions and arguments, we have also included the Trustee's identical contentions and arguments.

The damages awarded by the trial court were intended to reimburse Provident for the loss sustained by its predecessor, United, in connection with a transfer of assets from United to American Security Investment Company (American), in exchange for 30,800 shares of American's assertedly worthless shares. DePinto was a director of United until immediately prior to the transfer in question.

He contends on this appeal that the undisputed evidence discloses that any loss which may have been sustained by United as the result of its exchange of assets for stock in American was not proximately caused or contributed to by any act or omission of DePinto as a director of United. Accordingly, he argues that the trial court erred in denying his motion for a directed verdict, made at the close of all the evidence, and his motion for judgment notwithstanding the verdict.

We now state the salient facts as the jury could have found them on the basis of the evidence received at the trial.

In 1947, DePinto, a practicing physician with substantial investment interests, met James E. Kelly, one of the defendants in the original Gorsuch action. The two became friends and business associates. DePinto worked with and assisted Kelly in promoting Life Underwriters, Inc. (Underwriters), which was formed on June 16, 1952. Kelly was the president and DePinto a director of that company.

On November 21, 1952, Kelly organized United and held office as a director and officer of United from its inception until July, 1956. Although DePinto was not involved in organizing United, he soon learned that Underwriters had become the exclusive operating management and sales agent for United.

Before DePinto became officially connected with United, he attended a March 29, 1955 meeting of its directors, where he heard complaints about Kelly's management of United. On October 14, 1955, DePinto, responding to a request by Kelly, became a director of United.

He was not, however, an active director. At no time during his term as a director of United did he make a telephone call to United's office to obtain information concerning that company's financial condition. DePinto was not aware that United sustained losses in 1955, 1956, and up to October 18, 1957. He did not know who were the officers of United from July 18, 1956 to October 18, 1957.

Although Kelly resigned as president and director of United on July 18, 1956, DePinto did not become aware of this until October 18, 1957. On several occasions he signed the minutes of the directors' meetings without reading them. On two occasions when he was not in attendance, he signed minutes which recited that he was present in person.

In the fall of 1957, Kelly decided to sell his controlling stock interest in United. About October 13 or 14, 1957, he suggested to DePinto that in view of the imminent sale of Kelly's stock, DePinto should resign as a director. During this conversation Kelly told DePinto that the purchasers of Kelly's

Company v. Gorsuch, 9 Cir., 323 F.2d 839 (1963); In re Doig, No. 20460, order of November 2, 1965, unreported; Gorsuch v. Fireman's Fund Insurance Company, 9 Cir., 360 F.2d 23 (1966). Additionally, DePinto v. Provident Security Life Insurance Company, No. 20308, 9 Cir., 374 F.2d 50, and DePinto v. Provident Security Life Insurance Company, No. 20656, 9 Cir., 374 F.2d 50, consolidated for disposition in this court, are being decided in another opinion filed today.

stock in United would gain control of United, but the names of the purchasers were not then disclosed. DePinto did not inquire as to the details of the plan or how it would affect United.

Late on the afternoon of October 17, 1957, American was organized, with Sabo, Pegram, Landoe, Roslyn B. Croydon, John D. Ballantyne and Niesz as the incorporators and directors. On October 18, 1957, Kelly agreed in writing to sell 35,149.89 shares of United stock to American for $325,136.48. At 3:30 p.m. that afternoon, a meeting of the board of directors of American was held. The minutes of that meeting recite that Croydon reported that negotiations had been completed for the acquisition of approximately forty percent of the shares of United, "representing working control," to be paid for partly in cash and partly in assets which could be acquired from United in payment of Class A shares of American.

The directors of American thereupon adopted the four resolutions noted in the margin.[3] As indicated by these resolutions, American had arranged to sell to United 35,000 Class A common shares of American stock. The resolutions by American also indicate that in part payment for the 35,149.89 shares of United which Kelly was selling to American, Kelly was to receive the assets of United which American had acquired in payment for American stock.

A meeting of the board of directors of United was held at 4:00 p.m. on October 18, 1957. At that meeting, with directors DePinto, N. J. Dunn and J. L. Jenkins in attendance, a resolution was adopted accepting the resignations of A. Thomas Duncan, Patrick J. Kelly, E. Hartley Brown, T. J. Flaherty and Spence Reese, as directors of United. This resolution further provided that Niesz, Ballantyne, Croydon, Sabo, Pegram and Harvey T. Goss be elected as directors of United.

A second meeting of United's directors was held at 4:15 p.m. on that day, with only four of the directors (Niesz, Ballantyne, Croydon and Goss) in attendance. Three of these (Niesz, Ballantyne and Croydon) were directors of American and had participated in American's board meeting held at 3:30 p.m. earlier that afternoon.

The minutes of the 4:15 p.m. meeting of United first recite that Dunn, Jenkins and DePinto had previously tendered their resignations as directors, and record the adoption of a motion accepting these resignations. According to the minutes, two resolutions were then adopted, the effect of which was to subscribe for 35,000 shares of Class A common shares of American at ten dollars per share. All but 4,200 of these shares were to be purchased immediately for a total consideration of $308,000, consisting of United's secured and unsecured promissory notes, bonds, certificates of deposit and cash.

On the day these transactions took place, American did not have a permit from the Securities Division of the Arizona Corporation Commission authorizing the issuance of shares of its nonvoting common stock to United. At this time both Kelly and Croydon knew that Kelly was to be paid with $308,000 in

---

3. These resolutions were summarized in appellant's opening brief as follows:

"(a) That American sell to United 30,800 class A common shares of American for a consideration of $308,000, consisting of the assets referred to and described as items 1 through 6 in the United minutes of October 18, 1957, and hereinabove quoted from Exhibit 5H;

"(b) That American sell to United 4,200 shares of its class A common stock for the sum of $42,000, to be paid in cash on or before February 1, 1958;

"(c) That American accept the offer of James E. Kelly to sell 35,149.89 shares of United stock to American for $9.25 a share, and that American pay Kelly therefor by transferring to him the above-mentioned assets of United, plus additional cash in the amount of $17,136.48;

"(d) That American accept the offer of United Family Guild to sell 3,650 common shares of United to American at $9.25 a share, payable in cash."

assets of United for his sale to American of his stock in United. United was in a deficit condition on October 17, 1957. The 30,800 shares of American which were sold to United on October 18, 1957, apparently had no fair market value, which resulted in increasing United's existing deficit by $308,000.

In arguing that the undisputed evidence discloses that any loss which may have been sustained by United was not proximately caused or contributed to by any act or omission of DePinto as a director of United, DePinto does not refer to the numerous charges set out against him in the pretrial order, or as summarized in the instructions to the jury. Instead, he refers to two counts of the Doig complaint. Count VI of that complaint charges that DePinto "caused" United to transfer $314,794.19 to American, and that he and others breached their fiduciary duties by "permitting" United to enter into the agreement with American. Count VII of that complaint charges that DePinto and others "negligently" transferred control of United to the Niesz group which "looted" United.

Based on this formulation of the charges against him, DePinto first asserts that his resignation as a director of United was accepted by United's board of directors before the new board adopted the resolution authorizing the transfer of United's assets to American. DePinto argues that since he was not a director of United when this resolution was passed, he had no opportunity or authority to oppose the adoption of that resolution and therefore could not have "caused" or "permitted" the transfer of United's assets to American as charged in Count VI.

DePinto also argues that, contrary to the Count VII charge, there is no evidence to indicate that he negligently participated in a transfer of control of United to the Niesz group, nor that this negligence was a proximate cause of United's loss. Such negligence could be shown, he asserts, only if there is evidence to indicate that, had he made an investigation, he would have discovered that a member of the Niesz group was otherwise than a reputable and respected business or professional man. DePinto contends there is no such evidence. Thus, as to the Count VII charges, DePinto does not reach the question of proximate cause.

The jury verdict represents a finding that a proximate cause of United's loss on October 18, 1957, was DePinto's negligence in failing to keep himself informed concerning United's affairs, in failing to determine whether the new group would obtain control of United in a manner which would prejudice that company, and in failing to take effective action to thwart the plan which, upon a reasonable investigation, would have been shown to be contrary to the best interests of United. The verdict does not represent a finding that a proximate cause of United's loss was negligence on his part in failing to investigate the reputation of the proposed new directors before DePinto tendered his own resignation as a director. No such contention was advanced by plaintiffs,[4] and no evidence was produced by plaintiffs tending to prove such a contention.

According to the evidence, DePinto was aware of complaints against Kelly's management of Underwriters, an associated company. He knew that he was uninformed about the financial affairs of United. He was aware of the seeming haste with which the plan to transfer control of United from Kelly to the Niesz group was executed. He was chargeable with knowing that United was then in a deficit condition. He knew that Kelly and others had not told him the details of the proposed transaction.

The jury could have found, on the basis of these and other circumstances that, in the exercise of reasonable care and in the fulfillment of his fiduciary duties as a director of United, DePinto should have made a reasonable effort to ascertain whether the proposed shift in control would be inimical to the best

4. See note 1.

interests of United. The jury could have further found that a reasonable investigation by DePinto would have revealed that United stood to lose. All that was needed to expose the fraudulent scheme was for DePinto to ascertain that part of the transaction was for United to acquire 30,800 shares of American for a price of $314,794.19 in United assets, and to discover how much the 30,800 shares of American were worth. He would at least have learned that these shares of American, in existence just one day, were of doubtful value.

The jury could also have found that, armed with such information, it would have been DePinto's duty to decline Kelly's request that he resign as a director. Continuing as a director, the jury could have found, would have enabled DePinto actively to oppose the proposal before the board and, if necessary, draw the matter to the attention of stockholders and policy holders of United, and to the attention of state regulatory officials. The jury could have found that DePinto's failure to make a reasonable investigation as to whether the ultimate plan would adversely affect United, his resignation from the board of directors in compliance with Kelly's request and without having made such an investigation, and his failure, as a member of the board of United, to fight for the best interests of United, considered together, constituted negligence and a breach of fiduciary duty and was a proximate cause of the loss sustained by United as a result of the October 18, 1957 transaction.

We therefore conclude that the evidence was sufficient to warrant a jury finding against DePinto on the negligence, breach of fiduciary duty, and proximate cause issues raised by what DePinto states to be the controlling charges against him— those set forth in Counts VI and VII of the Doig complaint. It follows that the trial court did not err in denying the motions for a directed verdict, and for judgment notwithstanding the verdict, made on the ground that the evidence was inadequate in this regard.

DePinto next contends that there is no competent evidence on the amount of loss or damage sustained by United as a result of the October 18, 1957 transaction. Accordingly, he urges that the jury verdict was necessarily the result of speculation upon the part of the jury and his motion for judgment notwithstanding the verdict should therefore have been granted.

It is undisputed that, on October 18, 1957, United transferred to American, cash in the amount of $6,794.19, and other assets of United having a face value of $308,000, for which United received 30,800 shares of American common stock. In its instructions to the jury the trial court stated that, in computing damages, the value of the American stock received by United, as disclosed by the evidence, should be deducted from the jury's findings as to the value of the assets transferred by United. In view of the verdict, the jury presumably determined that the assets transferred by United to American were worth $314,794.19, and that the 30,800 shares of American stock received by United were valueless. DePinto argues that there is no competent evidence that United's transferred assets were worth $314,794.19, nor that the 30,800 shares of American stock received by United were valueless.

There was some evidence to indicate that the assets of United, transferred to American, were worth less than $314,794.19, and that the 30,800 shares of American stock received by United were not entirely valueless. However, there was also substantial evidence in favor of plaintiffs in both respects and the jury was entitled to find in accordance therewith. The trial court did not err in holding that the evidence as to damages was not so deficient as to require the granting of DePinto's motion for a judgment notwithstanding the verdict.

DePinto contends that the trial court erred in admitting certain evidence over his objection. Considerable evidence was received pertaining to DePinto's activities prior to the transaction on October

18, 1957, pertaining principally to his record as a director of Underwriters, the complaints heard by him at a meeting of the board of United concerning Kelly's management of that company, DePinto's failure to attend board meetings of United, his lack of knowledge concerning Kelly's resignation as an officer and director of United, and DePinto's general failure to inform himself concerning United's financial condition. DePinto argues that all this evidence is immaterial on the issue of whether any act or omission of DePinto was a proximate cause of the loss to United occasioned by the transaction of October 18, 1957.

■ In our view all this evidence is relevant to the question of whether DePinto was sufficiently put on notice so that he should have investigated the proposal effectuated on October 18, 1957.

Over DePinto's objection, the trial court allowed into evidence a report of an examination of the affairs of United for the year 1958 made by Guly L. Hammett, an examiner for the Insurance Department of the State of Arizona. DePinto contends that the report is hearsay and not admissible as an official document. In support of this view, he cites Olender v. United States, 9 Cir., 210 F.2d 795, where it was held that, to be admissible as an official document, the facts stated in the document must have been within the personal knowledge and observation of the recording official or his subordinates. DePinto presumably contends that the report in question contains statements not within the personal knowledge of Hammett or his subordinates.

■ There is no factual basis for this argument since Hammett testified that the document in question was prepared on the basis of an examination made by himself and another examiner of the agency. Moreover, the second paragraph of 28 U.S.C. § 1732 (1964), providing for the introduction in evidence of records made in the regular course of business, expressly provides that where certain essentials, not here questioned, are met, all other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight " * * * but such circumstances shall not affect its admissibility.". See LaPorte v. United States, 9 Cir., 300 F.2d 878, 881.

We have examined DePinto's additional contentions concerning the admission of items of evidence over his objection and find them to be without merit.

DePinto argues that the trial court erred in upholding plaintiff's objections to several lines of questioning of some of DePinto's witnesses on direct examination. The witnesses in question were Kelly, Croydon, Eugene Tompane, Niesz, Sabo, James C. Gregory and Landoe. DePinto also asserts that the trial court erred in rejecting DePinto's offer to read into evidence certain "Admitted Facts," as set out in the pretrial order. He argues that these "Admitted Facts," together with the proffered testimony referred to above, give a substantially complete picture of the activities of the Niesz group on and prior to October 18, 1957, with respect to the formation of American and its acquisition of United stock from Kelly. This evidence, DePinto contends, discloses that the Niesz group had no intention of looting United.[5]

DePinto argues that if he had made an investigation of the facts and circum-

---

5. DePinto contends that this proffered evidence reveals that each member of the Niesz group was acting pursuant to advice of counsel; that the Director of Insurance and the Director of the Securities Division of the Arizona Corporation Commission had been consulted; that the group mistakenly, but in good faith, thought their plan could be implemented by mortgages furnished through Eugene Tompane pursuant to approved Certificates of Contribution and that Sabo was making a $115,000 investment in the program; and that when United merged with Provident the latter company secured, by means of Certificates of Contribution, mortgages having a value of over $200,000 which were then carried on the books of Provident as assets and part of its surplus.

stances surrounding the transaction of October 18, 1957, he would presumably have learned of these background circumstances. He questions how the jury could determine whether DePinto's failure to investigate the circumstances surrounding the transaction of October 18, 1957, was or was not a proximate cause of United's loss without knowing all the facts which such an investigation would have revealed. With the whole picture before it, DePinto contends, the jury might well have concluded that a prudent director would not have refrained from participating in the election of the Niesz group to the board of directors of United.

The testimony in question of Kelly, Croydon, Niesz and Sabo, was first received at the original Gorsuch trial, at which time there were twelve personal defendants in addition to DePinto, and three defendant corporations in addition to United. The claims asserted against some of these other defendants were entirely different from the claims asserted then, and now, against DePinto. For example, in the original Gorsuch trial, it was charged that Sabo, Pegram, Croydon, Ballantyne and Niesz, all members of the board of directors of American, were also members of the board of directors of United on October 18, 1957.[6] Accordingly, it was urged that they were accountable to United for all their acts arising from their association with Kelly and American which may have been detrimental to United.

In order to meet these charges, it was important for these defendants, and also Kelly, to show the background facts in a light favorable to themselves. It follows that evidence of this character was entirely proper at the first trial. However, these defendants are not in the case now before us. Therefore, when it was proposed to read the original testimony into evidence at this DePinto trial, the trial court sustained objections made on the ground of immateriality.

■ We agree with these trial court rulings. Whatever DePinto might have discovered with reference to these background circumstances, he would still have been under a duty, as a director of United and under the circumstances of this case, to make a reasonable effort to ascertain the details of the plan as ultimately consummated. He made no such effort, and he cannot be excused on the ground that the facts pertaining to the preliminary negotiations would not have provided a warning that the ultimate plan would be prejudicial to United. It follows that, with respect to the particular dereliction charged against DePinto, a development of the background facts referred to above would not tend to relieve DePinto of liability. The proffered evidence was therefore properly rejected as immaterial.

On the same analysis we agree with the trial court that testimony of the same nature by Tompane and Gregory, offered for the first time at the DePinto trial, and certain "Admitted Facts" pertaining to these background circumstances, were also immaterial and properly excluded.

DePinto also contends that the trial court erred in rejecting testimony with respect to the reputation, integrity and business ability of various members of the Niesz group. DePinto argues that, for the purpose of appraising DePinto's conduct and his relationship to the transaction of October 18, 1957, the jury was entitled to know just what DePinto would have learned had he made an investigation of the Niesz group.

■ If DePinto had investigated the reputation of the individuals comprising the incoming group, and had reasonably believed therefrom that they were of good reputation, this would not have excused him, in view of all the circumstances of this case, from making a reasonable investigation of the details of the October 18, 1957 transaction as ultimately transacted. Therefore, the trial court did not err in excluding this evidence.

6. That some of these defendants denied this in the Gorsuch suit is immaterial for present purposes.

DePinto asserts that the trial court erred in excluding certain proffered evidence pertaining to the value of the 30,800 shares of American stock which United received. We have examined the nature of the offered testimony and the purposes for which it was offered, and conclude that the trial court did not err in rejecting it.

DePinto argues that the trial court erred in instructing the jury, over his objections, that DePinto had been charged with certain acts or omissions. This instruction is quoted in note 1 above. DePinto asserts that this instruction invited the jury to find DePinto was negligent with respect to acts or omissions which had nothing to do with the transaction of October 18, 1957, and concerning which he was not charged under the pleadings.

■ DePinto overlooks the fact that the pretrial order superseded the pleadings. Plaintiffs' contentions, as set out in that pretrial order, were correctly summarized in the instruction quoted in note 1. Thus DePinto is not correct in asserting that the acts or omissions listed in the instructions are not properly at issue. This instruction is correct even though some of those alleged acts may not have been a proximate cause of the loss sustained by United on October 18, 1957. The matter of proximate cause was dealt with in other instructions to the jury.

DePinto charges the district court with error in regard to several other instructions given over his objection. We have examined each such instance and conclude that the trial court did not err. We also conclude that the trial court did not err in refusing to give several instructions requested by DePinto.

DePinto contends that the trial court erred when, during the jury deliberations, the court answered a particular inquiry which the jury made in writing. The inquiry was for the court to repeat " * * * the 3 factors to be used in judging for the plaintiff." The court answered, in writing, that the three ultimate issues concerned DePinto's negligence in performing fiduciary duties, proximate cause, and damages. Amplifying the damage issue, the court listed the " * * * three items of claimed damage * * *" as shown in the margin.[7] DePinto argues that this itemization and totaling of the claimed damages volunteered information not requested by the jury, that it departed from the formal instructions, and that it practically invited the jury to render a judgment against DePinto for the total amount, without considering any reduction in that amount to the extent of the value of the shares of American stock received by United.

■ Our examination of the record indicates that the described itemization of the claimed damages was substantially in accord with a formal instruction, to which no objection is urged on this appeal. It was also germane to the jury's inquiry concerning the ultimate issues, one of which was the issue of damages. Before giving this answer to the jury, the trial judge telephoned DePinto's counsel and the latter then indicated that it would be all right to mention the three ultimate issues, and also the items of claimed damages. No objection was made before the jury brought in its verdict.

Moreover, we do not believe the itemization of damages had the prejudicial effect DePinto ascribes to it. Without evidence to the contrary, it must be presumed that the jury followed the court's original instruction which directed the jury to reduce their final verdict to the extent of the value of American stock received by United.

7. "The three items of claimed damage are:

| | | |
|---|---|---|
| 1) Cash, by check or bank certificates of deposit— | | $ 166,498.66 |
| 2) Promissory notes and accrued interest thereon— | | 87,626.88 |
| 3) Mortgages, bonds and accrued interest thereon— | | 60,668.65 |
| | Total | $ 314,794.19 |

The trial court did not err in giving the jury this written answer to their inquiry.

DePinto next argues that the judgment is excessive in three respects. One of these pertains to a provision of the merger agreement between United and Provident. The terms of that agreement provide that the net proceeds of any recovery in this stockholders' derivative action would be shared by each former owner of United stock in the proportion that the number of shares held by him bore to the total shares of United issued and outstanding. In accordance with this arrangement, "Certificates of Contingent Interest" were issued to the former stockholders of United.[8]

Pursuant to this plan, the 38,798 shares of United stock held by American were cancelled and all rights therein were relinquished and released. In addition, and in connection with the settlement which plaintiffs made with the executors of the Duhame estate, the latter released and surrendered the right to participate in any recovery herein to the extent of 3,750 shares of United stock.

The American shares and Duhame estates shares in United aggregated 42,548 shares, or roughly 42½% of the 100,000 shares of United outstanding at the time of the merger. DePinto asserts, therefore, that the former holders of United stock who will share in any net recovery herein, represent ownership of only 57½% of United stock originally issued and outstanding. He argues from this that the right of Provident to secure a judgment on behalf of the former United stockholders who will share therein should be limited to approximately 57½% of the total $314,794.19 claim arising from the October 18, 1957 transaction, or $180,856. Failure to reduce the judgment against DePinto to this amount, DePinto contends, would be grossly inequitable and would unjustly enrich the remaining 57½% of United's former shareholders.

In Provident Security Life Insurance Company v. Gorsuch, 9 Cir., 323 F.2d 839, 846–847, we held that the provision of the merger agreement releasing the net proceeds of this stockholders' derivative action to the former stockholders of United, did not render that agreement invalid. We also made it clear, however, that we were not passing upon the efficacy of that provision which undertakes to transfer these net proceeds from Provident to the former shareholders of United. In this connection we noted that it might be legally impermissible to effectuate such a transfer because of its tendency to deplete Provident's assets, which should be retained for the benefit of Provident stockholders and policyholders, and others who might be adversely affected. We expressed the view that these matters must be left to future agreement or litigation in which affected persons, not represented in the present suit, may have an opportunity to participate.

It is clear from these observations in our prior decision, to which we still adhere, that it cannot now be ascertained whether there will be any net proceeds from this derivative action for former United shareholders and, if so, whether their respective shares would evidence unjust enrichment. There are additional considerations, suggested by Provident, which add other uncertainties as to whether former United shareholders would be unjustly enriched. We mention only two: a substantial part of the proceeds may be awarded as attorneys' fees and litigation expenses;[9] the dollar re-

8. In the "Certificates of Contingent Interest" it is provided that there shall be deducted from any such net proceeds any recovery against Provident on possible claims which may be asserted against United which are not provided for in the merger agreement.

9. The judgment under review shows no such allowance, but in all likelihood provi-

sion will be made for attorneys' fees before any proceeds are transferred from Provident to others. In the previous judgment, entered on May 15, 1962, twenty-five percent of the full amount of the actual recovery, or $78,698.56, was allowed for legal services, together with necessary litigation expenses.

covery which former United shareholders may realize under this provision of the merger agreement, may not measure their full loss, considering that they have lost their equity in a going life insurance company.

While DePinto has cited a number of decisions in support of his position on this branch of the case, we do not find them persuasive under the special circumstances of this case. We hold that the trial court did not err in declining to reduce the judgment on the grounds discussed above.

A second respect in which the judgment is excessive, DePinto argues, results from the court's failure to credit the judgment against DePinto with the $100,000 Provident received in settlement of its claim against the Duhame estate. DePinto calls attention to Arizona decisions holding that a payment made by one joint tortfeasor must be credited upon the claim against another tortfeasor.

As pointed out earlier in this opinion, three claims were asserted against DePinto and several other defendants in the total amount of $553,353.63. The $100,000 received by Provident from the Duhame estate was allocated by the district court to the first of these claims, a claim of $177,863.84 for losses sustained by United between June 30, 1956 and October 18, 1957. This allocation was in accordance with the express terms of the settlement agreement, the indications being that there would not have been a settlement with the Duhame estate if any substantial part of this $100,000 settlement had been allocated to the $314,794.19 claim for damages sustained by United on October 18, 1957, or the $60,695.60 claim for damages sustained by United between October 19, 1957 and June, 1959.

As a result of that settlement, the entire $177,863.84 claim passed out of the case. Thus DePinto was credited in effect, in the amount of $177,863.84 against the aggregate of $553,353.63 in claims against him. Under these circumstances DePinto received more than was his due from the settlement with a joint

tortfeasor, and no departure from Arizona law occurred. DePinto's contention that the $177,863.84 claim was not in the case at the time of the Duhame estate settlement is without merit. It was set forth in the pretrial order which superseded the pleadings and was not dropped until after the settlement with the Duhame estate.

 The trial court did not err in declining to credit the $100,000 Duhame estate settlement to the $314,794.19 verdict returned against DePinto.

DePinto argues that the trial court erred by including, in the judgment, interest at the rate of six per cent per annum from October 18, 1957 until payment. He argues that since the judgment is based on an unliquidated claim for negligence and breach of fiduciary duty, interest may be imposed only from entry of the judgment.

 We agree. It is not here contended that DePinto benefited from the transaction of October 18, 1957, or that any Arizona statute authorizes the award of interest from the date of the tortious act. Under these circumstances, the Arizona rule permits interest on an unliquidated claim only from the date of judgment. See Schwartz v. Schwerin, 85 Ariz. 242, 336 P.2d 144, 149; Cf. Feighner v. Clarke, 2 Ariz.App. 286, 408 P.2d 219, 222. While *Schwartz* involved a claim for attorneys' fees on a quantum meruit basis, we think the Arizona court would apply the same rule with regard to a claim such as that prosecuted against DePinto.

The other contentions advanced by DePinto on this appeal have been examined, and we hold they are without merit.

 Plaintiffs have moved in this court for an order requiring the trial court to issue an order directing the United States Marshal to proceed with the sale of real property subject to the judicial lien herein. The motion was made in this court on September 13, 1966, but has been held in abeyance pending determination of this appeal. It is a motion which, but for the pendency of

this appeal, should have been addressed to the trial court. We deny the motion without prejudice to its renewal in the trial court upon the remand of this cause.

The cause is remanded with directions to modify the judgment to provide that interest at the rate of six per cent per annum shall run from entry of the judgment on June 28, 1965. The parties will bear their own costs on this appeal. In all other respects the judgment is affirmed.

PROVIDENT SECURITY LIFE INSURANCE COMPANY, and Albert J. Doig, Appellees.