Joseph M. WALKER, Plaintiff-Appellant,

v.

CONTINENTAL LIFE & ACCIDENT
COMPANY, Defendant-Appellee.

Carl L. MAUSER and Gertrude R.
Mauser, Plaintiffs-Appellants,

v.

CONTINENTAL LIFE & ACCIDENT
COMPANY, Defendant-Appellee.

Carl L. MAUSER et al., Plaintiffs-
Appellees,

v.

CONTINENTAL LIFE & ACCIDENT
COMPANY, Defendant-Appellant.

Nos. 23490, 23607 and 23608.

United States Court of Appeals,
Ninth Circuit.

June 23, 1971.

Rehearings Denied July 13, 1971.

Jack Rappeport, Tucson, Ariz. (argued), William McLane (argued), Phoenix, Ariz., for appellant.

Richard A. Segal (argued), of Gust Rosenfeld & Divelbess, Phoenix, Ariz., for appellee.

Before HAMLIN, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Walker and the Mausers brought these actions under diversity jurisdiction, 28 U.S.C. § 1332, to rescind certain annuity loan transactions and to recover their "out-of-pocket" interest payments on the ground that the commercial purpose of the transactions was frustrated when the Supreme Court in Knetsch v. United States, 1960, 364 U.S. 361, 81 S. Ct. 132, 5 L.Ed.2d 128, ruled that such transactions were a sham and that the "interest" payments were not deductible from gross income. The District Court granted rescission and awarded judgments of $107,963.60 in favor of the Mausers and $34,779.07 in favor of Walker, with interest from the date of the court's order granting rescission, April 11, 1968. Walker and the Mausers appeal from that portion of the judgment denying them interest from the dates the losses were sustained. Continental cross-appeals from that portion of the judgment finding it liable and ordering reimbursements.

The case was tried to the court on stipulated facts. In late 1953 agents of United Guaranty Life Society proposed to Walker and the Mausers annuity loan transactions similar to those described in the opinion in Knetsch v. United States, *supra*. The agents of United Guaranty represented that the interest to be paid in connection with the transactions was deductible for federal income tax purposes. Relying on these representations, Walker and the Mausers agreed to purchase the annuities. We need not describe the transactions. They are practically carbon copies of those involved in *Knetsch*. Such transactions were entered into by the Mausers in the years 1953 through 1957. Walker entered into similar transactions in 1953, 1954, 1956 and 1957. As is pointed out in Knetsch v. United States, *supra*, at 365–366, 81 S.Ct. 132, apart from the tax deduction there was nothing of substance to be gained by Walker or the Mausers from the transactions. Indeed, without the benefit of the tax deduction, the transactions would have been a hopelessly losing commercial proposition for them.

In 1955 United Guaranty Life Society changed its name to United Family Guild and spun off all its annuity business then in force to United Security Life pursuant to a Treaty of Reinsurance which covered the annuity contracts of Walker and the Mausers. Walker and the Mausers continued to engage in annuity loan transactions with United Security Life. After 1957, United Security Life merged into Provident Security Life Insurance Co. and Provident in turn merged into the defendant Continental Life & Accident Co.

None of the deductions claimed by Walker and the Mausers for the years in which they engaged in the annuity loan transactions were ever allowed. The Commissioner of Internal Revenue first disallowed the deductions claimed by the Mausers for the tax years 1953 and 1954 in January, 1956, and disallowed the de-

1074

ductions claimed by Walker for those years in February, 1957. On November 15, 1960, the Supreme Court decided Knetsch v. United States, *supra,* resolving the conflict between the Fifth Circuit's decision in United States v. Bond, 5 Cir., 1958, 258 F.2d 577, and our decision in Knetsch v. United States, 9 Cir., 1959, 272 F.2d 200, and upholding our view that interest paid in such annuity loan transactions was not deductible for federal income tax purposes. In late 1961 and early 1962 the Tax Court entered decisions disallowing the deductions claimed by Walker and the Mausers.

### I. *The appeal by Continental.*

■ First, we agree with the District Court that this is a proper case for application of the doctrine of commercial frustration. The case is analogous to West Los Angeles Institute for Cancer Research v. Mayer, 9 Cir., 1966, 366 F.2d 220. There we affirmed a decision granting rescission in a transaction involving the sale and leaseback of a going business to a charitable institution on the ground that the arrangement was frustrated by a 1954 revenue ruling rejecting the tax premises on which the transaction was based. *Mayer* applied Oregon law. In this case the applicable law is that of Arizona. But Continental does not argue that the result would be different in Arizona. As the trial court found, Walker and the Mausers entered into the transactions in good faith reliance upon representations by the insurer that the interest deduction would be allowed.

Continental concedes that *Mayer* states the controlling legal principles, but argues that Walker and the Mausers, unlike the plaintiff in *Mayer,* assumed the risk of an adverse tax ruling. In *Mayer,* we stated,

"The ultimate question in every case is 'whether or not proper interpretation of the contract shows that the risk of the subsequent events, whether or not foreseen, was assumed by the promisor. If it appears from the nature of the contract as well as from the surrounding circumstances that, although they were reasonably foreseeable, the promisor did not assume the risk of the subsequent events, the contract shows a gap subject to supplementation in accordance with rules of objective law. Conversely, if the contract, properly construed, shows that the promisor assumed the risk of unanticipated events, the occurrence of such events does not excuse performance.'" 366 F.2d at 225 (citations omitted).

The District Court in *Mayer* found on substantial evidence that the plaintiff there had not intended to assume the risk of an adverse tax ruling. In this case the District Court does not appear to have made a finding one way or the other on the question.

■ The failure of the court to make such a finding here is understandable. Continental did not raise below the contention that it now presses on appeal. The annuity loan agreements themselves are silent as to whether the risk was foreseen and as to which party assumed the burden of its occurrence. Thus a question of fact exists to be determined from the "nature of the contract as well as from the surrounding circumstances." The orderly disposition of lawsuits requires that the party relying on a factual contention make its position known to the District Court so that evidence may be adduced and findings made. The general rule is that this Court will not reverse the trial court on a contention that was never presented to it. See Helena Rubinstein, Inc. v. Bau, 9 Cir., 1970, 433 F.2d 1021, 1024, and cases cited therein. We find no reason to depart from that rule in this case.

■ Second, Continental argues that relief is barred by the three-year Arizona statute of limitations applicable to actions based on fraud or mistake. A.R.S. § 12–543. Arizona has abolished the distinction between legal and equitable proceedings. Rule 2, Arizona Rules of Civil Procedure, 16 A.R.S. Thus a

question is presented as to whether A. R.S. § 12–543 applies to bar the equitable remedy of rescission sought here. The District Court found it unnecessary to decide this question because it held that the cause of action for rescission based upon frustration of purpose arose either when the Tax Court finally disallowed the claimed interest deductions in October, 1961, and January, 1962, or no earlier than the November, 1960, decision in *Knetsch, supra.* The complaint was filed on February 23, 1962, within three years of the *Knetsch* decision. We agree with the District Court. The purpose of the transactions here was to obtain tax deductions. Until the Supreme Court finally decided the issue against the taxpayer in *Knetsch*, it was still possible that that purpose would be accomplished. Before *Knetsch* there was a conflict among the circuits. To hold, as Continental urges we do, that the cause of action arose when the Commissioner of Internal Revenue formally disallowed the claimed deductions in 1956 would lead to the anomalous result that the contract was subject to rescission at a time when its major purpose, obtaining a tax deduction, might still have been achieved.

Continental's reliance on *Mayer, supra,* is misplaced. In *Mayer* we held that the transaction was frustrated as of the time of the 1954 Revenue Ruling even though that ruling was later rejected by the Supreme Court in Commissioner of Internal Revenue v. Brown, 1965, 380 U.S. 563, 85 S.Ct. 1162, 14 L. Ed.2d 75. But in the *Mayer* transaction time was of the essence. The parties had intended that all or most of the Mayers' investment would be liquidated over a short period of time. They had not "contemplated that performance could await the favorable outcome of an extended tax controversy." 366 F.2d at 224. Thus there was a twofold purpose, (1) favorable tax treatment and (2) liquidation over a brief period, which was frustrated when the 1954 Revenue Ruling made an extended tax controversy necessary. Here, there is no suggestion

that Walker and the Mausers were not willing to wait for a final, favorable outcome. In fact they pressed their cases in the Tax Court for that very reason. Had *Knetsch* been decided differently they would not be here now.

Third, Continental argues that Walker and the Mausers are guilty of laches by not seeking rescission before the February, 1959, merger of United Security Life into Provident Security Life Insurance Co. Our holding that the cause of action did not accrue until November, 1960, disposes of this contention.

■ Fourth, Continental argues that the Treaty of Reinsurance between United Family Guild and United Security Life, upon which Continental's liability is concededly predicated, does not cover liability based on rescission of the annuities but limits the reinsurer's obligations with respect to the annuities to those that are "in accordance with their terms." The Treaty provides that United Security Life, the reinsurer, agrees:

" * * * to assume and hereafter to hold Ceding Company free and harmless of and from all liability of every kind and character on account of each and every the several annuities hereinabove referred to and set out on the bordereau hereof, *and* hereafter, in accordance with their terms, to service the annuity loans standing on the books of Reinsurer as of the effective date and hour hereof, in accordance with their terms." (Emphasis added.)

The reference to "all liability of every kind and character" is clearly broad enough to cover liability based on rescission. Continental says the phrase "in accordance with their terms" is meant to limit that liability. But the placement of that phrase after the italicized *and* strongly indicates that it was meant to refer to the second obligation, servicing the annuity loans. The repetition of the same phrase at the end of the quoted passage appears to be merely a redundancy. Our interpretation is strengthened by that part of the Treaty which provides that United Family Guild, the

ceding company, agrees "[t]o cede · * * * all liability of every kind and character on account of [the annuities]" and by the recital which states that "[t]he purpose of this agreement is to divest Ceding Company of all obligations in connection with the aforesaid annuities. * * * "

Finally, Continental argues that Walker signed a release acknowledging receipt of the surrender values of the annuities and absolving it of all further liability. The District Court's finding that the parties had not contemplated that the release would cover an action for rescission is not clearly erroneous.

## II. *The appeal by Walker and the Mausers.*

█ The District Court awarded interest to run from the date that the Court granted rescission. Walker and the Mausers claim this was error and they should have been awarded interest from the date the losses were sustained. They cite Peterson v. Valley National Bank of Phoenix, 1967, 102 Ariz. 434, 432 P.2d 446; King Realty, Inc. v. Grantwood Cemeteries, Inc., 1966, 4 Ariz.App. 76, 417 P.2d 710; and Feighner v. Clarke, 1965, 2 Ariz.App. 286, 408 P.2d 219, for the proposition that on a liquidated claim interest accrues from the date the debt became due. But none of those cases involved an equitable action similar to this suit for rescission of contract. We are cited to no Arizona authority and have found none dealing with the precise question involved here. Under these circumstances we think it proper to assume that Arizona follows the general rule that in an action for equitable relief the award of interest rests in the sound discretion of the trial judge. 25 C.J.S. Damages § 54. Based on the delays attributable to the plaintiffs in prosecuting this suit to a final decree, we find no abuse of discretion in awarding interest only from the date of judgment.

Affirmed.