Victor VACCA and Dominic Vacca

v.

INTRA MANAGEMENT CORPORATION
et al.

Civ. A. No. 74–1794.

United States District Court,
E. D. Pennsylvania.

June 14, 1976.

Morton J. Simon, Jr., Philadelphia, Pa.,
for plaintiff.

Ronald F. Kidd, David E. Shapiro, Samuel J. Hecht, Philadelphia, Pa., for defendants.

OPINION

BECHTLE, District Judge.

This case, alleging fraud in the sale of securities,[1] was tried before the Court with-

---

1. Specifically, plaintiffs' complaint alleges violations of Section 17(a) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), Securities and Exchange Commission Rule 10b–5, 17 C.F.R.

out a jury. Prior to receiving any evidence, the Court granted default judgments in favor of plaintiffs against defendants M.B.A. Funding Corporation ("M.B.A.") and Insider Funding Corporation ("I.F.C."). The Court also approved a stipulated entry of judgment in favor of plaintiffs against defendant John V. Cappello ("Cappello"). At the end of plaintiffs' case, the Court granted defendant Intra-Management Corporation's ("Intra-Management") motion for directed verdict pursuant to Rule 50 of the Federal Rules of Civil Procedure. Accordingly, this Opinion is concerned solely with the question of the liability *vel non* of Anthony DiSalvio ("Senior") and his son, Anthony DiSalvio, Jr. ("Junior"), to plaintiffs. In light of the Supreme Court's recent decision in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), we feel constrained to rule in favor of the DiSalvios for the reasons set forth below. Our findings of fact are embodied in the following narrative.

Victor Vacca ("Victor") and Dominic Vacca are brothers. Victor was the active participant in the transactions which form the subject matter of this lawsuit. Victor and Senior have been close friends all of their adult lives and Victor has known Junior, who is now 28 years old, all of the latter's life. Victor is the godfather of Junior's brother.

In June of 1969, Junior was approached by Cappello, who was a cousin of Junior's wife, about the formation of a new company which would be involved primarily in the sale of stocks. This was M.B.A. Junior, who was interested, introduced Cappello to various family members and friends who were encouraged to make an investment in the new corporation. Cappello spoke at a meeting attended by many members of the DiSalvio family in an effort to persuade them to invest. Among others, Senior invested in M.B.A.

During this same month of June, 1969, Victor visited the grocery store run by Senior while Senior and Junior were both present. Junior asked Victor if he would be interested in buying M.B.A. stock at 80 cents per share. Senior informed Victor that he had purchased the stock and was enthusiastic about it. Victor, who had never purchased stock in a corporation before, neither asked for, nor received, any documentation about M.B.A. He was simply told that it was in the brokerage business. However, relying upon the word and judgment of the DiSalvios, Victor made two separate $800 cash payments to Junior to purchase a total of 2,000 shares of M.B.A. stock. Junior placed this money in his account and made a check payable to M.B.A. for $1,600. Subsequently, Victor received a certificate for 2,000 shares of M.B.A. stock dated July 2, 1969. At the time of these transactions, Junior was neither a registered securities dealer, salesman, investment adviser nor solicitor under Pennsylvania law. *See* 70 P.S. § 33. He became a registered salesman by December of 1969 and remained so registered at least through all of 1970.

In June of 1970, Junior and Cappello met with Victor in order to sell him stock in I.F.C. Cappello delivered the sales "pitch" at the meeting. Victor gave Junior $5,000 in cash in order to purchase 4,000 shares of I.F.C. for himself and 1,000 shares for his brother, Dominic, at one dollar per share. Once again, Victor received no written information about the corporation in which he was investing.

The shares of I.F.C. were never issued. Rather, in December of 1970, Junior and Cappello came to Victor's home with a check for $5,000 to repay his purchase money for the I.F.C. stock. Junior explained that I.F.C. had never gotten off the ground and Victor could either have his money

§ 240.10b–5 (1975), and various sections of the Pennsylvania Securities Act of 1939, 70 P.S. § 31 *et seq.*, in addition to alleging common law fraud. Citing this Court's previous decision in *Kroungold v. Triester,* 407 F.Supp. 414 (E.D.Pa. 1975), plaintiffs voluntarily withdrew their

claim of an implied private right of action under the 1939 Pennsylvania Securities Act during the course of the trial. We exercised pendent jurisdiction over the common law fraud claim.

back or invest it in a new company that was being formed, Intra-Management Corporation. Apart from being told that Intra-Management would be involved in real estate sales and development, Victor was given no information about the new venture. However, after being informed that Junior's father and uncles had reinvested their I.F.C. money in Intra-Management, Victor was satisfied that it was a wise move. He endorsed the back of the check which Junior and Cappello had brought with them so that the $5,000 could be applied towards purchasing Intra-Management stock for he and his brother. It is unclear whether it was a corporate or personal check which Victor endorsed. In March of 1971, Victor received in the mail certificates for 4,000 shares of Intra-Management preferred stock and 4,000 shares of Intra-Management common stock in his name, plus certificates for 1,000 shares of Intra-Management preferred stock and 1,000 shares of Intra-Management common stock in the name of Dominic Vacca. All of the certificates were dated March 1, 1971. [Exhibits P-2, P-3, P-4, P-5.]

■ Plaintiffs now seek rescission and the return of their investment. Passing over the question of whether this suit was brought with the dispatch necessary to entitle plaintiffs to that "radical" remedy, see *Johns Hopkins University v. Hutton*, 488 F.2d 912 (4th Cir. 1973), *cert. denied*, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974); *Baumel v. Rosen*, 412 F.2d 571 (4th Cir. 1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 681, 24 L.Ed.2d 681 (1970), the Court believes that the evidence presented fails to establish any intent to deceive, manipulate or defraud on the part of the DiSalvios. In *Ernst & Ernst v. Hochfelder, supra,* the Supreme Court held that such an intent, or "scienter," is an essential element in an action for damages under Section 10(b) of the 1934 Act and Rule 10b–5. While the Supreme Court left open the question of whether scienter is a necessary element in an action for injunctive relief under those provisions, 96 S.Ct. at 1381 n. 12, we believe that the *Ernst & Ernst v. Hochfelder* holding applies equally to both equitable actions

for rescission and actions at law for money damages. *Cf. Ash v. LFE Corp.,* 525 F.2d 215, 220 (3d Cir. 1975); *Myzel v. Fields,* 386 F.2d 718, 740–742 (8th Cir. 1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968).

■ It is undisputed that several members of the DiSalvio family, including Senior, purchased stock in M.B.A., I.F.C. and Intra-Management. In addition, Junior's testimony is uncontested that he was never an officer of any of the corporations involved in this case and, in fact, while employed by M.B.A., that he was paid his sales commissions in that corporation's stock. In light of these facts, and in view of the long-standing, close personal relationship between these parties, the Court simply does not believe that the requisite intent to defraud existed. In light of this finding, plaintiffs cannot recover their investment from the DiSalvios under Section 10(b) of the 1934 Act or Rule 10b–5.

■ It is currently an open question whether a private cause of action exists under Section 17(a) of the 1933 Act. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 734 n.6, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Schultz v. Cally,* 528 F.2d 470, 475 n.11 (3d Cir. 1975). Assuming, *arguendo,* that such a cause of action is available, we believe that recovery under that section is also precluded by the rule laid down in *Ernst & Ernst v. Hochfelder, supra.* The "courts have endeavored to treat the '33 and '34 Acts *in pari materia* and to construe them as a single comprehensive scheme of regulation." *Globus v. Law Research Service, Inc.,* 418 F.2d 1276, 1286 (2d Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *accord, deHaas v. Empire Petroleum Co.,* 435 F.2d 1223, 1229 n.4 (10th Cir. 1970). We believe that, in the absence of proof of scienter, a finding of civil liability is as inappropriate under Section 17(a) of the 1933 Act as it is under Section 10(b) of the 1934 Act and Rule 10b–5. *Thompson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 401 F.Supp. 111, 114 (W.D.Okl.1975); *Larson v. Tony's Investments, Inc.,* 46 F.R.D. 612, 615 (M.D.Ala.

1969). This conclusion clearly follows from the fact that the language of Rule 10b–5 was derived in significant part from Section 17(a) of the 1933 Act. *Ernst & Ernst v. Hochfelder, supra,* 96 S.Ct. at 1390 n.32; *Blue Chip Stamps v. Manor Drug Stores, supra,* 421 U.S. at 767, 95 S.Ct. 1917 (Blackmun, J., dissenting).

■ Since plaintiffs have failed to prove all of the elements necessary to make out a successful claim under the sections of the federal securities statutes upon which they rely, we are left finally to decide whether the activities of the DiSalvios constituted common law fraud. The Supreme Court of Pennsylvania has stated:

> The essence of fraud is deceit *intentionally·* and successfully practiced to induce another to part with property or with some legal right. Fraud is practiced when deception of another to his damage is brought about by a misrepresentation of fact or by silence when good faith required expression. *In re Thorne's Estate,* 344 Pa. 503, 25 A.2d 811, 816 (1942) (emphasis added).

Once again, intent to defraud is an essential element of the claim made by plaintiffs. As we have ruled that there is no evidence of such an intent on the part of the DiSalvios, we decline to find them liable for common law fraud.

Our decision in this case should not be interpreted as condoning the actions of the DiSalvios. The Court is sensitive to the plight of plaintiffs. However, investment in securities is an inherently risky activity and the law does not provide a remedy for every mistake in judgment made by investors. Plaintiffs were novices in this field and made the mistake of acting on the advice of personal friends, the DiSalvios, who were hardly more experienced. They may all have been equally misled by Cappello. We simply hold that, whether or not the DiSalvios were negligent in aiding and abetting a possibly fraudulent scheme, they did not intend to deceive, manipulate or defraud the Vaccas and, therefore, are not liable.

An appropriate Order will be entered.