563 P.2d 280

**Carliflo McCORMACK, dba Citadel Realty, Appellant,**

v.

**Tressie Lee KIRTLEY, Appellee.**

No. 12661.

Supreme Court of Arizona,
In Division.

March 29, 1977.

Steven M. Friedman, Phoenix, for appellant.

Hill & Savoy by Cheryl K. Hendrix, Phoenix, for appellee.

CAMERON, Chief Justice.

This is an appeal by Carliflo McCormack from a judgment by the court sitting without a jury holding her and another, Bobbie Chargois, jointly and severally liable in the amount of $8,257.69, plus $1,000 in additional compensatory damages. Bobbie Chargois did not appeal.

We must consider the following issues on appeal:

1. Did the defendant McCormack have a contractual or legal obligation to retain the sums paid into the Citadel Realty Trust Account until the transfer of the liquor license was approved?

2. Did the plaintiff waive any possible duty imposed upon the defendant by withdrawing her application for transfer of the liquor license?

3. Was there sufficient evidence to support the trial court's conclusion that the defendant's conduct constituted fraud?

4. Was it equitable to hold the defendant McCormack responsible based on the facts of the instant case?

The facts giving rise to this appeal are as follows. On 11 February 1972, an agreement was entered into between Tressie Lee Kirtley, plaintiff in this action, and Bobbie Chargois, a codefendant, whereby Kirtley agreed to purchase and Chargois agreed to sell a Series No. 6 Spirituous Liquor License, all fixtures and equipment, and a "free and clear position" in a bar known as "The Plaid Cocktail Lounge." The liquor license and the lounge were in the name of J. W. Patterson, Chargois' brother; however, Chargois asserted all rights of ownership in both.

The terms of the agreement were negotiated between Kirtley and Bobbie Chargois. Having reached an agreement, Chargois called Carliflo McCormack, a licensed real estate broker who specializes in selling liquor licenses and businesses. Kirtley and Chargois met with McCormack, and she prepared the agreement around which this controversy centers. On 12 February 1972, it was signed by Kirtley, Chargois, and McCormack.

The essential terms of the agreement provided that out of the total purchase price of $24,000, plus an additional amount for the inventory, $10,000 was to be paid into McCormack's Citadel Realty Trust Account within six days of the agreement; $450 had been paid in advance to meet a mortgage payment, and the remaining balance of $13,550 was to be paid into the trust account on or before 10 March 1972. In return for her services, McCormack was to be paid a fee of $300. McCormack also prepared the application to the State Department of Liquor Licenses and Control stating "[i]t was part of my fee to prepare her applications for the transfer." The agreement provided that it was conditioned upon this transfer.

Pursuant to that agreement, Kirtley applied for a transfer of the liquor license and on 17 February gave McCormack a check for $10,000 payable to the Citadel Realty Trust Account. Kirtley took possession of the cocktail lounge on 2 March. On that same date, she paid Chargois $11,565 directly for her equity and inventory in the bar. Kirtley also paid an additional $2,700 into the Citadel Realty Trust Account to be applied toward the purchase of the bar.

Between 17 February and 23 March, McCormack wrote a number of checks on

the trust account. These checks were to pay off the various mortgages, liens and taxes owed by or outstanding against the Plaid Cocktail Lounge. Included in these payments was a sum of $3,000 paid to McCormack herself to satisfy a lien which she held against the lounge and her $300 fee.

Kirtley operated the cocktail lounge between 2 March and 16 May 1972. During that time a dispute arose concerning a lease of equipment with the Watkins Cigarette Service which had been entered into by the previous owners. As a result, a suit was filed by Watkins naming Kirtley, Chargois, and J. W. Patterson as defendants. Notice of this lawsuit was served upon the liquor department and a representative of the department indicated that the license would not be transferred until the lawsuit was either settled or otherwise disposed of. In the early part of May, Kirtley was informed by J. W. Patterson that because of the Watkins lawsuit he was having difficulty in getting a federal farm loan approved. At Patterson's request, the plaintiff agreed to release him from any liability resulting from the lawsuit. On 11 May, Kirtley signed the release. It had been drafted by Patterson's attorney and not only released Patterson but also directed the withdrawal of Kirtley's application for transfer of the liquor license. On 16 May, Patterson advised Kirtley that she could no longer operate the bar because it would jeopardize his liquor license and that he would have to take over the bar immediately. An inventory was taken and Kirtley was paid $1,045 for the existing stock and $88 for bar change.

Subsequently, Chargois met with Kirtley and stated that she would pay $100 a month in an attempt to reimburse the plaintiff. On 1 June, Kirtley received $100 from Chargois, however, no other payments were made.

In August 1972, Kirtley filed this action against Chargois and McCormack dba Citadel Realty. Trial was held before the Honorable Kenneth Chatwin, Judge of the Superior Court of Maricopa County, on 2 April 1974. Findings of fact and conclusions of law were made by the trial court.

On appeal, McCormack raises five questions for our consideration. The first two, namely, (1) "Can one who is not a party to an agreement be held liable in damages when she has fully complied with her instructions?" and (2) "Did the Appellant, McCORMACK, have a duty to withhold disbursement of the funds when there was no provision instructing her to do so in the agreement?," relate to an interpretation of the agreement which we have combined in issue number one concerning the duty of McCormack under the agreement. The third question, "Did the Appellant, CARLIFLO McCORMACK, have a duty to make restitution when the contract was fully performed on the one side and the Buyer waived any possible protection of Paragraph 5 of the Agreement and demand was never made on Appellant, CARLIFLO McCORMACK, for any restitution?" is covered by issue number two. Question number four presented by McCormack that "The evidence presented did not satisfy the essential nine (9) elements required to prove an action in misrepresentation." is contained in our issue number three. Defendant's question number five is our issue number four as restated.

## DEFENDANT'S DUTY TO RETAIN THE FUNDS

The central question presented by this appeal is whether McCormack dba Citadel Realty was under a duty either imposed by the agreement or otherwise not to disburse the funds placed in the Citadel Realty Trust Account until after the transfer of the liquor license. In answering this question it should be kept in mind that the Rules of Civil Procedure provide that "[f]indings of fact shall not be set aside unless clearly erroneous * * *." Rule 52(a), Rules of Civil Procedure, 16 A.R.S. The Court of Appeals has stated:

"In reviewing findings of fact on appeal, we are required to accept them as true unless they are clearly erroneous or unsupported by any credible evidence in the rec-

ord. (citations omitted) We further must view the record in a light most "favorable to upholding the judgment. (citation omitted)" *Bevins v. Dickson Electronics Corporation*, 16 Ariz.App. 105, 107, 491 P.2d 494, 496 (1971).

We are not, however, bound by the trial court's conclusions of law and we may draw our own conclusions of law from facts which are supported by the evidence and found by the trial court. *Owen v. Mecham*, 9 Ariz.App. 529, 454 P.2d 577 (1969).

In support of her position, McCormack advances two arguments. First, that she was merely a stakeholder, not a party to the agreement between Kirtley and Chargois and therefore not bound by its terms, and second, that the agreement itself did not require her to refrain from disbursing the funds until after the transfer had been approved. As to both contentions we do not agree.

Under the language of the agreement and the facts surrounding its execution, we are convinced that it was not only a contract between Kirtley as buyer and Chargois as seller, but constituted in addition an escrow agreement whereby McCormack agreed to act as escrow agent for both parties. We have said that:

"A good definition of the generic term 'escrow' is this: an escrow is a written instrument which by its terms imports a legal obligation, and which is deposited with a third party, to be kept by the depository until the performance of the prescribed condition or the happening of a certain event, and then to be delivered over to the grantee, promisee, or obligee." *Young v. Bishop*, 88 Ariz. 140, 146, 353 P.2d 1017, 1021 (1960).

The fact that the parties to an agreement do not label the deposit of the funds a deposit in escrow does not preclude us from concluding that that was their intention. In *Feighner v. Clarke*, 2 Ariz.App. 286, 408 P.2d 219 (1965), vacated on other grounds, 101 Ariz. 334, 419 P.2d 513 (1966), pursuant to an "agreement of employment" a check was deposited with the attorney for one of the parties. Although the agreement did not so specify, the court held that the deposit constituted an escrow. In reaching that conclusion the court said:

"No matter how we may construe the other terms of this 'agreement of employment', the portions concerning the deposit of the check and transfer of the rights of Dallas and his certificate, constituted an escrow agreement . . . . (citation omitted) The defendant * * * was bound by the terms of this agreement and could not dispose of the check other than by terms of the said agreement unless both parties to the agreement so permitted." *Feighner v. Clarke, supra*, 2 Ariz.App. at 289, 408 P.2d at 222.

In the instant case, the funds were deposited with McCormack conditioned upon the transfer of the liquor license, she manifested her assent to the terms of the agreement and her intent to be bound thereby both her signature, which appears at the bottom of the agreement along with the signatures of Kirtley and Chargois, and by the acceptance of the tendered funds into her trust account. From these facts, we hold that the agreement between Kirtley and Chargois was also an escrow agreement between McCormack, Kirtley and Chargois, and McCormack was bound to distribute the funds according to that agreement.

McCormack contends, however, that by the agreement she was not required to hold the funds until the transfer of the license. She points out that that portion of the agreement detailing how the initial $10,000 was to be disbursed failed to provide when the disbursement was to take place.

The agreement does provide:

"1,000 As part payment to Carliflo McCormack against the amount agreed upon of Three Thousand Dollars to be necessary to satisfy the mortgage held by said Carliflo McCormack. *The Balance due Carliflo McCormack of Two Thousand Dollars is "to be paid on or before March 10, 1972."* (Emphasis added)

But the disbursal of these funds was, however, further conditioned upon the transfer

of the liquor license; the final paragraph of the agreement provided as follows:

"5. Application has been made by TRESSIE LEE KIRTLEY and the fees have been paid by her requesting that the existing Series #6 Spirituous Liquor License be transferred to her name; *and this agreement is conditioned upon this transfer.*" (Emphasis added)

We have stated:

"The rule is well established that a court, when construing an agreement, must put itself in the position of the parties and give effect to their intention as of the time the agreement was made." *Rental Development Corp. v. Rubenstein Const. Co.*, 96 Ariz. 133, 136, 393 P.2d 144, 146 (1964).

And Williston on Contracts states:

"4. The circumstances under which a writing was made may always be shown. The question the court is seeking to answer is the meaning of the writing at the time and place when the contract was made; and all the surrounding circumstances at that time necessarily throw light upon the meaning of the contract." (footnotes omitted) 4 Williston on Contracts, § 618, pp. 716–17 (3 ed.).

■ We have examined the agreement and the circumstances surrounding its execution and conclude that according to the agreement and the express intention of the parties, the disbursal of the funds was conditioned upon the transfer of the license and that McCormack was therefore obligated to hold the funds until the transfer was approved.

The defendant was experienced in the sale of bars and cocktail lounges and knew that it generally takes 60 to 90 days for an application of this type to be approved. She was obligated to hold the deposited funds until that event occurred. In disbursing the funds in question prior to the transfer of the liquor license, McCormack breached her duty to the plaintiff under the terms of the escrow agreement. She is liable for any damages suffered as a result of that breach. *Tucson Title Insurance Company v. D'Ascoli*, 94 Ariz. 230, 383 P.2d

119 (1963); *Brean v. North Campbell Professional Building*, 26 Ariz.App. 381, 548 P.2d 1193 (1976); *Buffington v. Title Insurance Co. of Minnesota*, 26 Ariz.App. 97, 546 P.2d 366 (1976). We find no error.

## WAIVER

■ McCormack next contends that Kirtley waived any breach by withdrawing her application for transfer of the liquor license. In support of that contention, she cites *Security National Life Insurance Co. v. Pre-Need Camelback Plan, Inc.*, 19 Ariz. App. 580, 509 P.2d 652 (1973) and *Tyson v. Tyson*, 61 Ariz. 329, 149 P.2d 674 (1944), for the proposition that where one prevents the fulfillment of a condition precedent, one cannot thereafter rely on such failure to defeat the agreement. We do not agree.

To begin with, the evidence does not support a conclusion that Kirtley willingly withdrew the application for transfer. It was apparent that the license was not going to be transferred as long as the Watkins Cigarette suit was pending. Kirtley made an agreement with the named owner of the license in which the application was withdrawn. The conclusion of the trial court which reads as follows

"Because of the restriction on the transfer of the liquor license held by Watkins Cigarette Service, Tressie Lee Kirtley did not and could not receive a free and clear position to the Plaid Cocktail Lounge."

was supported by the evidence.

Due to circumstances not of her own making, Kirtley was prevented from completing the transaction. This being the case, she was forced to withdraw the application and the deal fell through. The withdrawal of the application, whatever its effect as between Kirtley as buyer and Chargois as seller, clearly did not constitute a waiver of the duties owed by McCormack as escrow agent to the buyer and seller.

## LIABILITY FOR FRAUD

The trial court found that McCormack's conduct was fraudulent and McCormack asserts on appeal that three of the nine ele-

**30**

ments of fraud were not supported by the evidence.

We need not rule on this contention, however, as McCormack is clearly liable for breach of her obligations under the escrow agreement, and it was not necessary to find fraud on the part of McCormack to enter judgment against her.

### EQUITABLE TO HOLD DEFENDANT LIABLE

McCormack states the final issue as:

"5. Whether the Court, in its equity jurisdiction, does equity by entering judgment of approximately $10,000.00 against one who acted only as a stenographer and stakeholder, following her instructions and receiving only $300.00 for her time and efforts."

McCormack, a licensed real estate broker, had not brought the two parties together so as to be entitled to a commission as a real estate broker. If she had, she could have prepared the instruments in the transaction but could not have charged a fee for their preparation. Arizona Constitution, Art. 26, § 1. She was, however, as the facts indicate, more than a mere scrivener. McCormack undertook to prepare two legal documents. First, an agreement between Kirtley and Chargois for the sale of a license which was held in the name of Patterson and who was not made party to the agreement, a fact which later put Kirtley in a poor position to assert her rights under the agreement for sale. This agreement was also an escrow contract between McCormack on the one side and Chargois and Kirtley on the other. The second legal document was the application for transfer of the liquor license from Patterson to Kirtley.

That the agreement was not a model of clarity is hardly surprising. That the agreement did not state what McCormack later thought it should have said was the result of the poor draftsmanship of McCormack. We do not believe it inequitable that, having undertaken the responsibility of preparing these documents, she should be required to respond in damages for presum-

ing to possess a degree of professional skill which she apparently lacked.

Affirmed.

STRUCKMEYER, V. C. J., and HOLOHAN, J., *concurring.*