593 P.2d 293

Steven H. GREENFIELD, Burton J. Greenfield and Helen P. Greenfield, his wife, Appellants and Cross-Appellees,

v.

Douglas Ellis CHEEK, Appellee and Cross-Appellant.

No. 1 CA–CIV 3785.

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 19, 1978.

Rehearing Denied Nov. 13, 1978.

Review Granted Dec. 12, 1978.

Dushoff & Sacks by David C. Tierney, Phoenix, for appellants and cross-appellees.

Filipe K. Johannson, Phoenix, and Richard A. Nulle, Scottsdale, for appellee and cross-appellant.

## OPINION

FROEB, Chief Judge.

Appellee, Douglas Ellis Cheek, brought an action for violation of state and federal securities law and common-law fraud. The defendants were Steven H. Greenfield and his parents, Burton J. Greenfield and Helen P. Greenfield. The complaint contained seven counts. Counts I through III alleged stock registration violations: Count I was under Arizona law (A.R.S. § 44–1841); Count II was under California and Illinois law; and Count III was under federal law (§ 5 and § 12 of the Securities Act of 1933). Counts IV through VI alleged fraud; Count IV was under § 17(a) of the 1933 Act; Count V was under § 10 of the Securities Exchange Act of 1934; and Count VI alleged fraud under Arizona law. Count VII alleged breach of warranty and sought indemnification for costs and attorneys' fees. The Greenfields counterclaimed for the amount due on a promissory note.

After a trial without a jury, the court entered judgment against Steven Greenfield on Counts IV and VII and the claim under A.R.S. § 44–1991 alleged in Count VI for $31,248 compensatory damages and $10,000 attorneys' fees plus costs. The trial court ruled that the transaction involved was exempt from Arizona and federal registration requirements and that the California and Illinois securities laws were inapplicable to the case. It found that federal courts had exclusive jurisdiction over claims under § 10(b) of the 1934 Act and that the elements of common-law fraud had not been proven. Burton and Helen Greenfield were found not liable. The court ruled against the Greenfields' counterclaim for the balance due under the promissory note. Steven Greenfield appeals from the judgment against him and the Greenfields appeal from the denial of their counterclaim. Appellee, in his cross appeal, claims that the judgment should have been larger and that it should have been against the other Greenfields as well.

Neither party designated the trial transcript as part of the record on appeal, hence we are bound by the factual findings that the trial court made in its findings of fact and conclusions of law and judgment unless they are clearly erroneous. *See* R.Civ.P., Rule 52(a); *McCormack v. Kirtley,* 115 Ariz. 25, 563 P.2d 280 (1977); *Evans v. Scottsdale Plumbing Co.,* 10 Ariz.App. 184, 457 P.2d 724 (1969). The findings and conclusions are set forth in the appendix.

Appellee has conceded the correctness of the trial court's rulings as to Counts II (the inapplicability of California and Illinois law), and V (the exclusiveness of federal jurisdiction over securities fraud cases under § 10(b) of the 1934 Act).

It is clear that no recovery is available under common-law fraud. Arizona case

law requires proof of nine elements for actionable fraud. *Nielson v. Flashberg*, 101 Ariz. 335, 419 P.2d 514 (1966). According to the findings of fact, four of the elements are missing, namely: knowledge of the falsity, intent to deceive, reliance, and resulting damages.

We turn therefore to Counts I and III.[1] The trial court ruled correctly that the stock transaction was exempt from Arizona and federal registration statutes.[2] A.R.S. § 44–1844 provides:

The provisions of §§ 44–1841 and 44–1842 shall not apply to any of the following classes of transactions:

\* \* \* \* \* \*

4. The sale in good faith and not for the purpose of avoiding the provisions of this chapter of securities by the bona fide owner of such securities, other than an issuer or underwriter, in an isolated transaction, in which the securities are sold either directly or through a dealer as agent for the owner but where the sales are not made in the course of repeated or successive transactions of similar character by the owner and are not made, directly or indirectly, for the benefit of the issuer or an underwriter of the securities.

15 U.S.C. § 77d (§ 4 of the 1933 Act) provides:

The provisions of section 77e of this title shall not apply to—

(1) transactions by any person other than an issuer, underwriter, or dealer.

The trial court's determination that "the sale was an isolated one made by a non-issuer, non-broker and non-underwriter in good faith and not for the purpose of avoiding the registration requirement," brings the transaction within the above exemption and is supported by the findings.

Appellant's basic contention is that the trial court erred in its legal conclusion that the actions of Steven Greenfield constituted civil fraud in violation of A.R.S. § 44–1991(2) and 15 U.S.C. § 77q (§ 17(a) of the 1933 Act). We agree, since that conclusion is not supported by the findings of fact.

A.R.S. § 44–1991 provides:

It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities, including securities exempted under § 44–1843 and including transactions exempted under § 44–1844, directly or indirectly to do any of the following:

1. Employ any device, scheme or artifice to defraud.

2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

15 U.S.C. § 77q (§ 17(a) of the 1933 Act) provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

---

1. Unlike the provision for exclusive federal jurisdiction over suits arising under the Securities Exchange Act of 1934, state courts have concurrent jurisdiction with the federal courts over suits arising under the Securities Act of 1933.

15 U.S.C. § 77v (§ 22 of the 1933 Act). *Jennings v. Roberts Scott & Co., Inc.*, 113 Ariz. 57, 546 P.2d 343 (1976).

2. A.R.S. § 44–1841 and 15 U.S.C. § 77e (§ 5 of the 1933 Act).

The trial court found (finding 21) that when Steven Greenfield made the statement as to liabilities in the May 31, 1973, pro forma financial statement, he had no knowledge that it was not true and made it without any intent to deceive, "i. e., without any scienter." It also found that appellee had not relied upon its truth (finding 24) and had not been damaged by it (finding 23). As we have pointed out earlier, the absence of the elements of knowledge of falsity, intent to deceive, reliance, and resulting damages precludes recovery for common-law fraud in Arizona. The question is whether the absence of any of those elements also precludes recovery under securities fraud statutes.

Initially, we dispose of appellee's argument that this is a nondisclosure case, and that; therefore, *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) applies. It is unclear whether the Supreme Court in *Affiliated Ute* eliminated reliance as a requirement in nondisclosure cases brought under § 10(b) of the 1934 Act or whether it merely shifted the burden of proof as to that element to the defendants. We need not decide that, however, because the case before us is not one of nondisclosure. Appellee contends that Steven Greenfield failed to disclose the insolvency of Sunliner, but the trial court made no finding of insolvency. The court found only that Steven Greenfield made no representations as to whether Sunliner was solvent or insolvent (finding 16). We cannot infer from the absence of such a finding that the corporation was insolvent. The trial court did find that the liabilities were understated (finding 18). Thus, this case is an affirmative misrepresentation case, not a nondisclosure case.

We next take up a major question in the case: that is whether an intent to deceive, often referred to as scienter, is necessary to sustain a claim of securities fraud. We hold that it is.

There is little case law in Arizona interpreting A.R.S. § 44–1991. Since the language of § 44–1991 is almost identical to its federal counterpart, 15 U.S.C. § 77q (§ 17(a) of the Securities Act of 1933), it is appropriate to look to federal case law on the subject.

The United States Supreme Court held in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) that an intent to deceive, manipulate, or defraud (scienter) is essential to a private cause of action for damages under § 10(b) of the Securities Act of 1934 and S.E.C. Rule 10b–5.

Does § 17(a) of the 1933 Act (of which A.R.S. § 44–1991 is a counterpart) impose the same requirement? Prior to *Ernst & Ernst*, the Court of Appeals for the Fourth Circuit in *Johns Hopkins University v. Hutton*, 488 F.2d 912 (4th Cir. 1973) recognized scienter as a necessary element in actions under § 17(a) of the 1933 Act. Since *Ernst & Ernst*, other federal courts have come to the same conclusion. *See, e. g., Sanders v. John Nuveen & Co., Inc.*, 554 F.2d 790 (7th Cir. 1977); *S. E. C. v. American Realty Trust*, 429 F.Supp. 1148 (E.D.Va.1977); *Malik v. Universal Resources Corp.*, 425 F.Supp. 350 (S.D.Cal.1976); *Vacca v. Intra Management Corp.*, 415 F.Supp. 248 (E.D. Pa.1976).

The primary reason given is the similarity of language between § 17(a) of the 1933 Act and Rule 10b–5 promulgated by the Securities Exchange Commission under § 10(b) of the 1934 Act.[3] *See, e. g., Ernst &*

---

3. Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

*Ernst v. Hochfelder*, 425 U.S. at 212 n. 32, 96 S.Ct. at 1390, 47 L.Ed.2d at 688; *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 767, 95 S.Ct. 1917, 1940, 44 L.Ed.2d 539, 567 (1975) (Blackman, J., dissenting); *White v. Abrams*, 495 F.2d 724, 727 n. 2 (9th Cir. 1974); *S. E. C. v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 867 (2nd Cir. 1968) (Friendly, J., concurring), *cert. denied sub nom. Coates v. S. E. C.*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); Goldwasser, *Ernst & Ernst v. Hochfelder; An Anti-Landmark Decision*, 22 N.Y.L. School L.Rev. 29, 30 (1976). It is reasonable to conclude, as did the Ninth Circuit in *White v. Abrams*, that the requirements under § 17(a) are the same as those under § 10(b). That court said, "[s]ince the relevant language of section 17(a) is almost identical to the language of rule 10b–5, we will assume that the elements for a private action under that section are the same as the elements for an action under rule 10b–5." *Id.* at 727 n. 2.

Another reason for uniform treatment of § 17(a) and Rule 10b–5 is the similarity in purpose of the two sections. As a result of the similarity,

> courts and scholarly commentators alike have generally treated these provisions interchangeably as affording the same remedies and requiring identical proof to establish liability. To now hold that scienter is a required element of proof under § 10(b) of the 1934 Act but not under § 17(a) of the 1933 Act would create an undesirable and . . . unintended asymmetry of coverage between the two Acts which would certainly result in all such future civil claims being brought under § 17(a) to avoid the stiffer proof requirements of § 10(b). Such a ruling would signal the easy circumvention and swift desuetude of *Ernst.*

*Malik v. Universal Resources Corp.*, 425 F.Supp. at 363 (footnote omitted). *See also Vacca v. Intra Management Corp.*, 415 F.Supp. at 250.

A third reason for requiring scienter under § 17(a) and Rule 10b–5 is that neither § 17(a) nor § 10(b) (under which Rule 10b–5 was promulgated) have the procedural restrictions that are found in other sections alleging recovery for merely negligent conduct. The United States Supreme Court said in *Ernst & Ernst* :

> We think these procedural limitations indicate that the judicially created private damage remedy under § 10(b)—which has no comparable restrictions—cannot be extended, consistently with the intent of Congress, to actions premised on negligent wrongdoing. Such extension would allow causes of action covered by § 11, § 12(2) and § 15 to be brought instead under § 10(b) and thereby nullify the effectiveness of the carefully drawn procedural restrictions on these express actions. [citations omitted]. We would be unwilling to bring about this result absent substantial support in the legislative history, and there is none.

This reasoning has been found applicable to § 17(a). *Malik v. Universal Resources Corp.*, 425 F.Supp. at 363–64 (footnotes omitted); *Sanders v. John Nuveen & Co., Inc.*, 554 F.2d at 795–96.

■ It is currently an open question in federal courts whether a private cause of action exists under § 17(a) of the 1933 Act. *See Sanders v. John Nuveen & Co., Inc.*, 554 F.2d at 795; *Vacca v. Intra Management Corp.*, 415 F.Supp. at 250. But even if we assume such a cause of action does exist, we hold that scienter, an intent to deceive, manipulate, or defraud, is a prerequisite. We likewise hold scienter is required under the Arizona counterpart, A.R.S. § 44–1991. Thus, having found an absence of scienter, the trial court was in error in holding Steven Greenfield liable for securities fraud under A.R.S. § 44–1991(2) and 15 U.S.C. § 77q.[4]

4. There is an apparent error in finding 18 for which there is no explanation, although we determine that it does not detract from our resolution of the case. The finding speaks in terms of "liabilities" shown on the financial

statement. Subparagraph (a) refers to arrearages on aircraft payments, which are liabilities. On the other hand, subparagraph (b) refers to flying revenues and states that they were "understated." (We will assume that the word

We are aware that statements made in several Arizona decisions appear to be to the contrary. *Baker v. Walston & Company*, 7 Ariz.App. 590, 442 P.2d 148 (1968) states, without citation of authority, that "knowledge of falsity is not a necessary element of a cause of action based upon A.R.S. § 44–1991." 7 Ariz.App. at 593, 442 P.2d at 151. It should be noted, however, that *Baker* was decided well before the *Ernst & Ernst* decision at a time when the United States Courts of Appeal were divided over the same issue. *Strom v. Black*, 22 Ariz.App. 102, 523 P.2d 1339 (1974), also decided before *Ernst & Ernst*, does not deal directly with the question. *Washington National Corp. v. Thomas*, 117 Ariz. 95, 570 P.2d 1268 (App.1977) states, on the authority of *Baker*, that "knowledge of fault is not a necessary element of a cause of action based upon A.R.S. § 44–1991." 117 Ariz. at 102, 570 P.2d at 1275. *Washington National* was decided after *Ernst & Ernst*, but it does not deal directly with the scienter issue.

In resolving this case upon the scienter question, we do not reach a discussion of reliance, causation, or damages, except to note that each presents a potential basis for reversal of the judgment in addition to the absence of scienter.

■ The next question relates to that portion of the judgment by which the court awarded attorney fees in the sum of $10,000 and costs to appellee. Conclusion of law number 3 states that attorney fees are recoverable by reason of Counts IV and VII of the complaint. Since Count IV relates to securities fraud, the award must fail under this count because securities fraud has been ruled out by our decision. Count VII relates to contractual indemnification under the contract between the parties. In particular, the contract provides that "sellers agree to indemnify and hold buyer and the company harmless against any expense, loss, damage or deficiency . . . on account of the failure of any of the representations and warranties of sellers to be true and correct . . . ." While it is possible that appellee could recover under this provision without having to prove securities fraud, the findings do not establish, apart from the issue of securities fraud, a basis for recovery. The order for attorney fees and costs is, therefore, reversed.

A final matter is the Greenfield counterclaim for the balance due upon the promissory note representing the purchase of the stock. In conclusion of law number 4, the trial court denied recovery upon the note, presumably because it found appellee entitled to damages for securities fraud. Since that determination is reversed, it is necessary to remand the issues presented under the counterclaim to the trial court for such further proceedings as may be necessary. The Greenfields have asserted in their reply brief that this court should direct that judgment be entered forthwith upon the counterclaim because appellee has not replied to this assertion in his brief. While we recognize in certain instances that this will be treated in this court as a concession by the opposing party (*see, for example, Bulova Watch Co. v. Super Department Stores of Arizona*, 4 Ariz.App. 553, 422 P.2d 184 (1967)), we decline to so treat it in this case in order that the matter can be decided on the merits.

For the reasons stated, the judgment of the trial court is reversed and the case is

should be "overstated.") Revenues, of course, are not liabilities and thus there is within finding 18 an internal inconsistency. This takes on importance with regard to other findings concerning the May 31, 1973, financial statement (e. g., findings number 20, 21, 23, 24) inasmuch as the latter refer to "liabilities" and make no mention of "revenues" or "assets." Can it be that the trial court did not intend that its findings concerning lack of scienter, lack of reliance, and lack of resulting damages were not meant to apply to the flying revenue aspect of finding 18? We think otherwise. When the findings are read together it is apparent that the trial court included the flying revenues of subparagraph 18(b) in the term "liabilities." Moreover, if the flying revenues were deemed not to come within the description "liabilities," the finding in subparagraph 18(b) would be left "hanging" and would not support a judgment for securities fraud against Greenfield because there are no sequential findings relating to it concerning scienter, reliance, or resulting damages.

remanded for proceedings relating to the counterclaim consistent with our opinion.

DONOFRIO, J., concurring.

HAIRE, specially concurring:

Although I concurred in the decision reached by Division Two in *Washington National Corp. v. Thomas, supra,* I am now convinced that scienter should be required as an element of a claim based upon a violation of A.R.S. § 44–1991. I, therefore, concur in both the reasoning and the result reached in Judge Froeb's opinion.

## APPENDIX

FINDINGS OF FACT:

1. In July 1973, all of the stock of Sunliner Aircraft Leasing Corporation, an Arizona corporation, d. b. a. Lease-A-Plane of Phoenix, was owned by STEVEN H. GREENFIELD, the manager of the corporation's business, and by Burton J. Greenfield and Helen P. Greenfield, his wife, investors, who lived in Chicago and were STEVEN GREENFIELD's parents. STEVEN GREENFIELD owned 100 shares of common stock and his parents owned 500 shares of common stock.

2. On or about July 22, 1973, STEVEN GREENFIELD's parents gave him authority to act as their attorney-in-fact in arranging a sale of the stock of Sunliner Aircraft Leasing Corporation. They participated in no way in the making of representations in the said sale.

3. Burton J. Greenfield and Helen P. Greenfield had no contact or role in the sale transaction which was subsequently arranged by their son STEVEN GREENFIELD and never received (nor were to receive) any of the proceeds from such sale.

4. On July 23, 1973, after STEVEN GREENFIELD took the sale documents to California on a commercial airliner, STEVEN GREENFIELD and DOUGLAS ELLIS CHEEK (hereafter "DOUG ELLIS") signed the July 23, 1973 Agreement by which the Sunliner stock was sold to DOUG ELLIS. The signing was done in Anaheim, California.

5. The terms of the July 23, 1973 Agreement required, among other things, that DOUG ELLIS pay to STEVEN GREENFIELD:

(a) $30,000.00 in cash,

(b) $15,000.00 over 4 years pursuant to a promissory note requiring payments of $312.50 per month,

(c) a certain percent of future profits.

6. Attached to the July 23, 1973 Agreement was a pro forma financial statement as of May 31, 1973, which excluded Sunliner's debt of $30,000.00 to Lease-A-Plane International Licensing Corporation.

7. This $30,000.00 indebtedness was excluded from the pro forma financial statement because STEVEN GREENFIELD had agreed to take the $30,000.00 cash down payment which he was to receive from DOUG ELLIS and pay off that $30,000.00 corporate indebtedness to Lease-A-Plane International Licensing Corporation.

8. STEVEN GREENFIELD received the $30,000.00 cash down-payment from DOUG ELLIS in two checks during July and September, 1973. He paid over all of that $30,000.00 which he received to Lease-A-Plane International Licensing Corporation, as agreed.

9. STEVEN GREENFIELD also received the following amounts from DOUG ELLIS as payment on the promissory note:

| CHECK DATE | AMOUNT | TRIAL EXHIBIT |
| --- | --- | --- |
| 9/21/73 | $314.78 | 58 |
| 10/10/73 | $312.50 | 58 |
| 11/1/73 | $312.50 | 58 |
| 12/22/73 | $312.50 | 58 |

These were corporate checks drawn on Sunliner payable to STEVEN GREENFIELD, reflected by entries in Sunliner's books showing "advances" to DOUG ELLIS. DOUG ELLIS made no other payments to STEVEN GREENFIELD.

10. DOUG ELLIS never repaid to Sunliner any of the advances which the records show he received.

11. STEVEN GREENFIELD suggested that DOUG ELLIS should, in July 1973, provide to Sunliner Aircraft Leasing Corpo-

ration $15,000.00 in additional working capital.

12. DOUG ELLIS did, in July 1973, provide to Sunliner Aircraft Leasing Corporation $15,000.00 in additional working capital.

13. In addition to the $31,250.00 paid to STEVEN GREENFIELD, Burton J. Greenfield and Helen P. Greenfield, and to the $15,000.00 in additional working capital, DOUG ELLIS caused to be expended on behalf of Sunliner Aircraft Leasing Corporation $41,750.00 in the form of funds provided by his mother, Mrs. Henrietta Ellis.

14. Prior to coming to work at Sunliner in the spring of 1973, DOUG ELLIS had two years of business training at a junior college and held several jobs as a service writer in automobile agencies in the Phoenix area and elsewhere.

15. Prior to his being presented with the July 23, 1973 Agreement attaching the pro forma financial statement of May 31, 1973, DOUG ELLIS had:

(a) worked as an employee of Sunliner for approximately 16 weeks, 12 weeks of which had been spent as a "Manager in Training";

(b) been instructed by STEVEN GREENFIELD in the financial operations of the corporation's business, including:

(i) how to make up a monthly budget,

(ii) what the monthly financial statements were and how to use them in making up a monthly budget,

(iii) how the checkbook operated,

(iv) how the accounts payable and receivable systems were operated.

16. STEVEN GREENFIELD made no representations to DOUG ELLIS as to whether Sunliner was a solvent or insolvent business.

17. DOUG ELLIS was warned by James Aiman (a fellow employee) prior to his signing the July 23, 1973 Agreement that he should obtain an accountant to review it to be sure that he understood it. DOUG ELLIS chose not to do so, never asked Sunliner's accountant any questions about the finances of the corporation, and signed the July 23, 1973 Agreement without fully understanding the pro forma financial statement as of May 31, 1973, which was attached thereto.

18. The Liabilities shown on the May 31, 1973 pro forma financial statement attached to the July 23, 1973 Agreement were incorrectly stated in that:

(a) the arrearages on aircraft payments were understated,

(b) flying revenues were understated by reason of Defendant STEVEN GREENFIELD personally paying for "clearing accounts".

19. While the May 31, 1973 pro forma financial statement contained no "going concern" disclaimer,

(a) the May 31, 1973 pro forma financial statement was not prepared by an accountant, nor was it represented as being prepared by an accountant;

(b) it is *not required* under general [sic] accepted accounting principles applied on a consistent basis that such a disclaimer be stated in a pro forma financial statement.

20. STEVEN GREENFIELD had obtained the figures as to liabilities which were shown in the May 31, 1975 [sic] pro forma financial statement from Sunliner's accountant and reasonably believed them to be correct. He had received a communication from Fidelity Acceptance Corp. dated May 27, 1973 indicating the aircraft arrearages *were* correctly stated.

21. STEVEN GREENFIELD made the statement as to liabilities in the May 31, 1973 pro forma financial statement (a) without any knowledge that it was not true and (b) without any intent to deceive, i. e., without any scienter.

22. STEVEN GREENFIELD partially understands financial statements and explained to DOUG ELLIS the financial statements of May 31, 1973 of Sunliner Aircraft Leasing Corporation.

23. DOUG ELLIS was not damaged in any way by the alleged misstatement of liabilities in the May 31, 1973 pro forma financial statement, since Fidelity Accept-

78

ance Corp., the party to whom the "unstated" liabilities were allegedly owed, agreed, that they were not owed and would not be collected by it.

24. DOUG ELLIS did not rely upon the truth of the statements as to liabilities in the May 31, 1973 pro forma financial statement in deciding to enter into the July 23, 1973 Agreement.

25. Following his purchase of Sunliner, DOUG ELLIS operated the business as an owner-manager from July 1973 until July of 1974 when the business closed its doors. He operated the business inefficiently and partly caused its close.

26. Within two weeks of taking over the ownership and operation of Sunliner, DOUG ELLIS cut short the training which STEVEN GREENFIELD was giving him by ordering STEVEN GREENFIELD to leave the premises of Sunliner and not to return. Though STEVEN GREENFIELD called frequently during the four months thereafter, DOUG ELLIS told his employees not to give him the calls as he did not want to talk to STEVEN GREENFIELD.

27. During that twelve-month period that he operated Sunliner, DOUG ELLIS never invested any money in Sunliner or paid any sums to the corporation.

28. During that twelve-month period, DOUG's mother, Mrs. Henrietta Ellis, paid various sums of money to Sunliner, having first borrowed those sums from the Valley National Bank pursuant to papers in which she stated the funds were "to make additional investment in family corporation". The checks which indicate the transfers of some sums were annotated "Lease-A-Plane of Phoenix—Loan—60 days" and other similar legends.

29. None of the funds which were paid to Sunliner by Mrs. Henrietta Ellis ever resulted in DOUG's personally signing any notes to Mrs. Ellis, though one such note was prepared in January of 1975 [sic], and never signed by DOUG.

30. At one point, in October of 1973, Sunliner issued common stock to Mrs. Ellis, although the certificate was subsequently voided.

31. DOUG ELLIS has no enforceable legal obligation to repay Mrs. Henrietta Ellis any of the sums which she paid to Sunliner. Only the corporation has that legal obligation.

32. In all but one instance, the various legal and accounting fees which Plaintiff has sued for in Count 7 of his Complaint were not paid by him and he was not personally liable for those sums.

33. In the sole instance of his attorneys' fees incurred in the processing of this case, DOUG ELLIS has proved and is entitled to attorneys' fees in the amount of $10,000.00.

34. In November of 1973, after having operated the business of Sunliner for over three months, DOUG ELLIS complained to STEVEN GREENFIELD of plane arrearages having been understated on the May 31, 1973 pro forma financial statement. A meeting was held in Phoenix and during the meeting STEVEN GREENFIELD and another person who was an authorized representative of Fidelity Acceptance Corp. (to which the arrearages were allegedly owed) stated to DOUG ELLIS that the "unstated" arrearages which he asserted that Sunliner might owe to Fidelity Acceptance Corp. *were not owed* and would not be collected from Sunliner.

35. After September 1973, Fidelity Acceptance Corp. never *attempted to collect* from Sunliner any arrearages in excess of those which were stated in the May 31, 1973 pro forma financial statement attached to the July 23, 1973 Agreement.

CONCLUSIONS OF LAW

1. The actions of STEVEN GREENFIELD constituted civil fraud and were therefore violations of the laws of the State of Arizona, specifically A.R.S. Section 44–1991(2) and 15 U.S.C. Section 77(q), the Federal Securities Exchange Act of 1933, per Count 4 of the Complaint.

2. Under Count 4 of the Complaint, DOUG ELLIS was damaged by the civil fraud to the extent of his $30,000.00 cash down payment which he paid to STEVEN GREENFIELD, $1,252.28 in payments which DOUG ELLIS had made to STEVEN GREENFIELD under the $15,000.00 prom-

issory note. Any sums which might have been given or loaned to the corporation after July 23, 1973 are not recoverable because they were not DOUG ELLIS' funds and because the giving of such funds to a "dying" business after the facts about it were fully known was not a reasonable act.

3. DOUG ELLIS is entitled to $10,000.00 as and for his attorneys' fees, under Counts 4 and 7 of the Complaint.

4. STEVEN GREENFIELD is entitled to no amounts under his Counterclaim for sums allegedly owed to him by DOUG ELLIS under the $15,000.00 promissory note.

5. Burton J. Greenfield and Helen P. Greenfield, his wife, did not aid in, participate in, or induce any illegal sale or purchase of securities under A.R.S. Section 44–1991 or Section 44–2003.

6. Burton J. Greenfield and Helen P. Greenfield, his wife, are not responsible to DOUG ELLIS for any damages.

7. The circumstances proved at trial were such that there was no conduct by any of the defendants justifying the punitive damages which were requested in the Complaint.

8. As to the Securities Registration Counts of the Complaint, the laws of California and Illinois are inapplicable to the facts of this case, there being no significant contacts with those states; further this was an exempt transaction because, among other things, there was no public offering under the Arizona Act and the sale was an isolated one made by a non-issuer, non-broker and non-underwriter in good faith and not for the purpose of avoiding the registration requirements; finally, Federal Courts have exclusive jurisdiction of Federal Registration questions and, in any event, this was an exempt transaction under the Federal law for the reasons set out above.

IT IS, THEREFORE, ORDERED Granting Plaintiff Judgment against Defendant, STEVEN GREENFIELD, only in the sum of $31,248.00 compensatory damages, plus attorneys' fees in the sum of $10,000.00, plus Plaintiff's costs.

IT IS FURTHER ORDERED Judgment for Defendant on remaining issues.

IT IS FURTHER ORDERED Judgment for Plaintiff on Defendant's Counterclaim.