659 P.2d 1264

John E. SMITH and Mary Lou Smith, his wife, Plaintiffs/Appellants,

v.

MELSON, INC., an Arizona corporation, Joseph Fallini, the State Land Commissioner, and Arizona State Land Department, an Agency of the State of Arizona, Defendants/Appellees.

No. 16088–PR.

Supreme Court of Arizona, En Banc.

Jan. 25, 1983.

Rehearing Denied Feb. 9, 1983.

Ellis & Baker, P.C. by William D. Baker, Robert S. Porter, Phoenix, for plaintiffs/appellants.

Black, Robertshaw, Frederick, Copple & Wright, P.C. by Frederick O. Robertshaw, Robert K. Corbin, Atty. Gen. by Kathy W. Rand, Asst. Atty. Gen., Phoenix, for defendants/appellees.

HOLOHAN, Chief Justice.

Appellants John E. and Mary Lou Smith appeal from a judgment denying specific performance of a contract. The court of appeals affirmed the judgment of the superior court, Howard, C.J., dissenting. We granted the Smiths' petition for review.

The essential facts are not in dispute, and they show that in October, 1972, Smith became interested in purchasing a portion of the Willow Springs Ranch including 600 acres along the San Pedro River. In November, the owner, Lazy V-P Ranches (Appellee Melson's predecessor in title), applied to the State Land Department to exchange 5,000 acres of patented land for 5,000 acres of state land. Included in the 5,000 acres of patented land were the 600 acres desired by Smith. The land exchange application was given the number 61–14.

In December, Smith offered to buy a part of the ranch. He was informed that 600 acres of the land he sought were part of a land exchange application. An agreement was reached whereby Smith would buy the east end of the ranch excluding the 600 acres in the land exchange, and a separate agreement was to be negotiated concerning the 600 acres. The parties entered into a "range and pasturing agreement" concerning the 600 acres. This agreement referred to the escrow for the purchase of the east end of the ranch. It stated that it was written to establish "continuing range and pasturing rights during the term of the note and mortgage which is the security for the unpaid balance of the purchase price." Payment of the purchase price on the east end transaction was not fully due until 1980.

The agreement concerning the 600 acres provided that Smith was to have grazing rights on the 600 acres during the term of the note and mortgage. It stated that Lazy V–P "contemplate[d] disposing of this 600 acres" before the note was fully paid. If title to "these 600 acres" was acquired by the State of Arizona, Lazy V–P was to exercise its preferential rights to a grazing lease and to assign such rights to Smith without additional compensation. "If the Exchange with the State of Arizona for the 600 acres . . . is not approved, or for any reason fails or is withdrawn," Lazy V–P was to sell the "said 600 acres" to Smith for $24,000. If "the Exchange with the State of Arizona is not consummated at the time the purchase price [on the east end of the ranch] is paid in full," Lazy V–P was to sell and Smith to buy the "said 600 acres" for $24,000 under stated terms. Finally, the agreement provided for stock watering

rights for both parties during the term of the note and mortgage.

The "Range and Pasturing Agreement" was later amended to more accurately describe the 600 acres. Application 61–14 was also amended several times, always decreasing the total acreage involved but always retaining the 600 acres in the amendments. In 1979, the State Land Department rejected application 61–14 and all amendments thereto. It also reclassified the state land described in application 61–14 leaving no identifiable state lands available for an exchange.

Melson, which had succeeded to Lazy V–P's interest, requested a rehearing on the denial of the application. Rehearing was denied. Melson filed a notice of appeal from these orders but did nothing more.

Shortly thereafter Smith tendered escrow instructions and demanded specific performance of the sale of the 600 acres. Melson refused. Melson instead submitted a proposal to the State Land Department offering to transfer the 600 acres for a four-year extension of another Melson state land lease. The State rejected the plan. Melson then proposed to deed the 600 acres to the State in return for rental credit on two existing leases and a new ten-year lease on other state land. As a result of this last proposal, Melson and the State finally reached an agreement whereby the 600 acres was deeded to the State for a one-year, rent-free extension of a grazing lease. Melson dismissed his appeal.

Smith sued for specific performance of the contract. The action was tried to the court which concluded that the "Range and Pasturing Agreement" was not ambiguous, that the term "the Exchange" referred to any exchange involving the 600 acres, that the express purpose of the agreement was to provide grazing rights to Smith and that the State's order of exchange terminated Smith's option to purchase the 600 acres. The court therefore denied specific performance and Smith appealed. The court of appeals by a 2–1 decision affirmed.

The only issue presented is whether the Smiths were entitled to specific perform-ance under the agreement between them and the Lazy V–P Ranches. The parties do not contest Smith's position that the agreement is binding on the successor in interest and the State.

■ The construction of a contract is a question of law where the terms of the agreement are plain and unambiguous. *Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 566 P.2d 1332 (1977), *Ridara Livestock Co. v. Agricultural Products Co.*, 61 Ariz. 473, 150 P.2d 761 (1944). *See also,* Restatement (Second) of Contracts § 212(2) (1981).

■ Although we must accept the trial court's findings of fact on appeal unless they are clearly erroneous or unsupported by any credible evidence, we are free to draw our own legal conclusions from the facts in evidence. *McCormack v. Kirtley,* 115 Ariz. 25, 563 P.2d 280 (1977); *Owen v. Mecham,* 9 Ariz.App. 529, 454 P.2d 577 (1969).

■ A contract should be read in light of the parties' intentions as reflected by their language and in view of all the circumstances. If the intention of the parties is clear from such a reading, there is no ambiguity. *Arkansas Amusement Corp. v. Kempner,* 57 F.2d 466 (8th Cir.1932); *Ness v. Greater Arizona Realty,* 117 Ariz. 357, 572 P.2d 1195 (App.1977). *See* 3 A. Corbin, Contracts § 535 (1960). The trial court, having found as a matter of law that the agreement was unambiguous, nevertheless proceeded to reach the strained conclusion that "*the* Exchange" meant *any* exchange.

While we concur with the trial court and the court of appeals in their conclusion that the instant contract was unambiguous, neither the text itself nor the circumstances surrounding the transaction provide support for the trial court's reading of the contract.

Turning first to the text of the range agreement, we find that the parties repeatedly referred to "the Exchange." Unlike the indefinite article "a", "the" is a definite article used in reference to a particular thing, in this case, a particular exchange application. This construction is

buttressed by the capitalization of the noun, "Exchange", as well as by language contemplating approval, failure or withdrawal (implicitly, of a particular thing). Such specificity would be unnecessary if the Lazy V–P intended to sell the acreage to Smith only in the event the ranch was unable to consummate *any* exchange during the seven-year term of the note.

■ When interpreting an agreement, the court may always consider the surrounding circumstances. *See* Restatement (Second) of Contracts § 212 (1981); J. Murray, Contracts § 108 (1974). An examination of the circumstances surrounding the range agreement shows Smith and the Lazy V–P executed the agreement knowing that a specific exchange application was pending in the State Land Department. It was with such knowledge that the parties used the language "the Exchange" in their agreement.

Melson and the State contend the range agreement was drafted primarily to provide grazing rights. This construction ignores the facts surrounding the agreement. It is evident, and was throughout the history of this transaction, that the Smiths wanted to purchase this 600 acre parcel, but if that was not possible, the Smiths wanted the grazing rights. The construction urged by the appellees ignores that part of the agreement which provided that if the exchange was not approved, the Smiths were entitled to purchase the 600 acres at a specific price.

■ The fact that the agreement was designated "Range and Pasturing Agreement" is not dispositive, since the purpose of an agreement is to be divined from the entire instrument and the surrounding circumstances and not from the label the parties attach to it. *Farmers Investment Co. v. Pima Mining Co.,* 111 Ariz. 56, 523 P.2d 487 (1974); *Kintner v. Wolfe,* 102 Ariz. 164, 426 P.2d 798 (1967); *Giovanelli v. First Federal Savings and Loan Assoc. of Phoenix,* 120 Ariz. 577, 587 P.2d 763 (App.1978). Here, the record shows Smith's primary objective in entering the two transactions was to acquire a working ranch. The provision of grazing rights was a secondary purpose necessitated by the pending exchange application.

■ Considering the language of the range agreement and the context in which it was made, we conclude the only exchange the parties contemplated or discussed was the one sought under application 61–14.

If, after a careful consideration of the words of a contract, in the light of all the relevant circumstances, and of all the tentative rules of interpretation based upon the experience of courts and linguists, a plain and definite meaning is achieved by the court, a meaning actually given by one party as the other party had reason to know, [the court] will not disregard this plain and definite meaning and substitute another that is less convincing. 3 A. Corbin, Contracts § 535 at 19–20 (1960), *quoted in Vinnell Corp. v. State ex rel. Bob Skousen Contractor, Inc.,* 109 Ariz. 87, 89, 505 P.2d 547, 549 (1973). *See Century Medical Plaza v. Goldstein,* 122 Ariz. 583, 596 P.2d 721 (App.1979).

We conclude that once the State rejected application 61–14, Smith had the right to purchase and Melson had the duty to convey the acreage in question.

The opinion of the court of appeals is vacated (*Smith v. Melson, Inc.,* 135 Ariz. 134, 659 P.2d 1279 (App.1982)). The judgment of the superior court is reversed, and the cause is remanded to that court with directions to enter judgment granting the Smiths' specific performance of the agreement.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.